Accordingly, Plaintiff's claim, that Bertram should not be cloaked in absolute immunity because he sought to prosecute Plaintiff in the absence of evidence to support the charges filed against him, has been expressly rejected by the Supreme Court in *Buckley. See id.* Although Plaintiff's view of the evidence may be different than Bertram's view of the evidence – and the jury may have ultimately agreed with Plaintiff's view of the evidence had the matter gone to trial – the fact remains that Bertram is absolutely immune for his professional evaluation of the evidence assembled, and for his presentation of that evidence to the grand jury. *See id.* Thus, Plaintiff's claim on this issue fails, and we hold that the district court did not err in dismissing Plaintiff's claims against Bertram on the basis of absolute immunity.

### D. Plaintiff's Motion for Partial Summary Judgment as to his Claim Brought Against Benningfield

Plaintiff argues that because "it is uncontested that no credible or admissible evidence existed that Dr. Higgason had attempted to feed unprescribed medications to his mother[,]" *see* Plaintiff's Brief at 31, the district court should have granted Plaintiff's motion for summary judgment regarding his § 1983 claim against Benningfield for denial of Plaintiff's right to due process of law. Because we have concluded that the district court did not err in dismissing Plaintiff's claim against Benningfield, Plaintiff's argument is moot.

### CONCLUSION

For the above-stated reasons, the judgment of the district court is **AFFIRMED**.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0150P (6th Cir.)
File Name: 02a0150p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

GARY L. HIGGASON, M.D.,
  *Plaintiff-Appellant,*

  *v.*                                    No. 00-5984

ROBERT F. STEPHENS, et al.,
  *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
Nos. 00-00017—Joseph M. Hood, District Judge.

Argued: September 14, 2001

Decided and Filed: May 1, 2002

Before: SILER and CLAY, Circuit Judges; GRAHAM,[*] District Judge.

—————————

### COUNSEL

**ARGUED:** Robert L. Treadway, Lexington, Kentucky, for Appellant. James M. Herrick, KENTUCKY STATE POLICE LEGAL OFFICE, Frankfort, Kentucky, for Appellees.

_____

[*] The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

**ON BRIEF:** Robert L. Treadway, Lexington, Kentucky, for Appellant. James M. Herrick, KENTUCKY STATE POLICE LEGAL OFFICE, Frankfort, Kentucky, William B. Pettus, OFFICE OF THE ATTORNEY GENERAL, Frankfort, Kentucky, for Appellees.

———————————

## OPINION

———————————

CLAY, Circuit Judge.  Plaintiff, Gary L. Higgason, M.D., appeals from the district court's judgment entered on May 18, 2000, dismissing Plaintiff's civil rights action filed pursuant to 42 U.S.C. § 1983 against Defendants, Robert F. Stephens, in his official capacity as Secretary of Justice Cabinet, Commonwealth of Kentucky and as acting Commissioner of the Kentucky State Police; Gary Rose, individually; Dennis Benningfield, individually; Dwaine Barnett, individually; and Barry Bertram, individually (who together constitute Kentucky's Commonwealth's Attorney for Green County, and officials of the Kentucky State Police), in connection with Plaintiff's indictment for twelve counts of attempted murder of his mother, which was ultimately dismissed by the state trial court.  For the reasons set forth below, we **AFFIRM**.

### BACKGROUND
### Procedural History

Following the dismissal of the criminal charges brought against Plaintiff in the Green Circuit Court, Green County, Kentucky, Plaintiff filed a § 1983 claim on February 29, 2000, in federal district court seeking injunctive relief from Stephens and monetary relief from Rose, Benningfield, and Bertram.  Plaintiff also sought monetary damages from Defendants Rose, Benningfield, and Bertram in connection with pendent state law claims of false arrest and imprisonment, defamation, and perjury.  Defendants were specifically sued in the following capacities:  1) Robert F. Stephens is Secretary of the Justice Cabinet for the Commonwealth of Kentucky and is acting Commissioner of

proper level of immunity, a reviewing court employs the "functional approach" announced by the Supreme Court; that is, a court looks to "['']the nature of the function performed, not the identity of the actor who performed it.'"  *Id.*  The Court explained:

> Petitioner argues that *Imbler's* protection for a prosecutor's conduct in initiating a prosecution and in presenting the State's case, extends only to the act of initiation itself and to conduct occurring in the courtroom.  This extreme position is plainly foreclosed by our opinion in *Imbler* itself.  We expressly stated that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom, and are nonetheless entitled to absolute immunity. We noted in particular that an out-of-court effort to control the presentation of [a] witness' testimony was entitled to absolute immunity because it was fairly within [the prosecutor's] function as an advocate.  To be sure, *Burns* made explicit the point we had reserved in *Imbler*: A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity. *We have not retreated, however, from the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.*

*Id.* at 272-73 (internal quotation marks and citations omitted; emphasis added).

### C.  Plaintiff's § 1983 Claim Against Bertram for Violation of Plaintiff's Fourteenth Amendment Right to Due Process of Law

As stated, the district court dismissed Plaintiff's § 1983 claims against Commonwealth's Attorney Bertram on the basis that a prosecutor enjoys absolute prosecutorial immunity when he acts within the scope of his prosecutorial duties. The court opined, "[a]s Bertram is being sued for conducting his duties as a prosecutor, he is absolutely immune from suit under Count Two." (J.A. at 57.)  We agree.

Plaintiff concedes that a prosecutor is absolutely immune from civil liability in connection with the actions he takes in furtherance of the duties of his office as a prosecutor. Plaintiff argues, however, that Bertram cannot enjoy the benefit of being cloaked in absolute immunity in the matter at hand because Bertram brought the criminal charges against Plaintiff "on absolutely *no admissible evidence that a crime has been committed, or could have been committed*." *See* Plaintiff's Brief at 29 (emphasis in original). Plaintiff goes on to argue that "[t]here should be no legal or judicial goal of protecting prosecutors who bring prosecutions based on absolutely no admissible evidence, and as to a crime which could not have been committed. This is a bright line test that this Court should adopt in order to provide justice to Dr. Higgason." *See id.* at 30. Plaintiff's interpretation of the law regarding prosecutorial immunity is skewed such that the "bright line" test he urges this Court to adopt is prohibited by Supreme Court precedent.

The Supreme Court has held that a prosecutor is entitled to absolute immunity in connection with his duties in functioning as a prosecutor; however, if a prosecutor's actions are considered "investigatory or administrative" in nature, then the prosecutor would only be entitled to qualified immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).  In deciding whether the acts were prosecutorial or administrative/investigatory in nature so as to impose the

the Kentucky State Police; 2) Rose was, at the time of the alleged wrongful actions, the Commissioner of the Kentucky State Police and is now simply employed by the Kentucky State Police; 3) Benningfield was, at the time of the alleged wrongful actions, a detective with the Kentucky State Police and is now employed by the Kentucky State Police in its Driver Testing Division; 4) Barnett was, at the time of the alleged wrongful actions, employed by the Kentucky State Police as a trooper and was identified as a "spokesman" for the Kentucky State Police in news reports, and is currently employed by the Kentucky State Police; 5) Bertram is and was at the time of the alleged wrongful actions, Kentucky's Commonwealth's Attorney for the Eleventh Judicial Circuit, comprising, among others, Green County, Kentucky.

Defendant Bertram filed a motion to dismiss the § 1983 action on the basis of absolute prosecutorial immunity, and also requested that the pendent state law claims should therefore be dismissed.  Defendants Stephens, Rose, Benningfield and Barnett collectively filed a motion to dismiss, claiming that Plaintiff had failed to set forth a basis for injunctive relief and had failed to state a colorable civil rights claim.  These Defendants also argued that the state claims were barred by the applicable statute of limitations. All Defendants attached exhibits to their motions such as affidavits and various pieces of documentary evidence.

In response, Plaintiff filed a cross-motion for partial summary judgment as to Count II of his complaint regarding Benningfield's alleged violation of Plaintiff's civil rights under § 1983. Plaintiff claimed that because Defendants went beyond the pleadings in filing their motions to dismiss, the motions should be interpreted as ones for summary judgment under Rule 56.  Plaintiff therefore claimed that his cross-motion for summary judgment as to Benningfield was procedurally proper and should be granted inasmuch as no genuine issue of material fact remained for trial that Benningfield's conduct was wrongful under an objective standard.

On May 18, 2000, the district court entered its judgment dismissing Plaintiff's federal claims with prejudice, dismissing Plaintiff's pendent state law claims without prejudice, and denying all pending motions as moot. The district court contemporaneously issued its memorandum opinion and order. In so doing, the district court found that the statement in the Green Circuit Court's Order of Dismissal of the criminal charges against Plaintiff, to the effect that probable cause had existed to bring the charges, constituted res judicata or collateral estoppel as to Plaintiff's § 1983 claims.

Plaintiff thereafter filed a motion to alter, amend, or vacate the May 18, 2000 judgment; and on July 12, 2000, the district court denied Plaintiff's motion. Plaintiff filed this timely appeal.

### Facts

This matter arises out of the arrest and indictment of Plaintiff, a medical doctor, by Defendants on twelve counts of attempted murder of Plaintiff's mother. Plaintiff's mother, Margie Higgason ("Margie"), was about sixty-nine years old at the time. Margie lived in Green County, Kentucky at all times relevant to this matter, while Plaintiff lived in Lexington, Fayette County, Kentucky during the relevant time period. Plaintiff's sister, Sharon Higgason ("Sharon"), lived with Margie in Green County. Sharon is developmentally disabled to the degree that she is capable of rational thought only to the level of a small child. Sharon has been found incompetent for legal and testamentary purposes. Sharon was, however, able to obtain a driver's license at about age thirty-seven by attending a special driving school and having the questions on the driver's test read to her.

Sharon had been prescribed a medication called Serax (generic name oxazepam) to control her panic attacks. Serax is an anti-anxiety drug belonging to the group of anxiolytics known as benzodiazepines. Margie had been prescribed "nerve pills" for as long as Plaintiff could remember, and she had a history of going from doctor to doctor in search of

reasonable person would have known." *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The Court applies a three-part test when determining whether a government official is entitled to the affirmative defense of qualified immunity. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*). The first inquiry is whether the Plaintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated that right; and the third inquiry is "whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established rights." *Id.* "In inquiring whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993) (citation and internal quotation marks omitted).

Here, when applying the three-part test to the facts of this case, Plaintiff's case is barred by the affirmative defense of qualified immunity at the inception inasmuch as Plaintiff has failed to show a violation of a constitutionally protected right. *See Williams*, 186 F.3d at 691. As noted, Plaintiff's due process allegation comes down to a claim he was indicted without probable cause. However, it has long been settled that "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *See Ex parte United States*, 287 U.S. 241, 250 (1932). Therefore, because Plaintiff was indicted pursuant to a determination made by the grand jury, he has no basis for his constitutional claim. *See id.* Accordingly, we affirm the district court's dismissal of Plaintiff's claims against Benningfield and Rose, albeit for reasons different than those of the district court. *See City Management Corp. v. U.S. Chemical Co., Inc.*, 43 F.3d 244, 251 (6th Cir. 1994).

to all Defendants, we affirm the district court's dismissal of Plaintiff's claims against Benningfield and Rose on the basis of qualified immunity.

### B.   Plaintiff's § 1983 Claim Against Benningfield and Rose for Violation of Plaintiff's Fourteenth Amendment Right to Due Process of Law

At the outset, we note that Plaintiff does not challenge the district court's finding that Benningfield was absolutely immune from suit for allegedly providing perjured testimony against Plaintiff in violation of Plaintiff's right to due process of law. Plaintiff bases his claim on appeal on the other due process allegations made against Benningfield and Rose as set forth in his complaint:

Rose, as Commissioner of State Police, had a duty to see that all investigations made by the Kentucky State Police were conducted in a reasonable manner, and in such manner so as to prevent the violation of the civil and constitutional rights of those being investigated.

* * *

The failure to seek scientific evidence and to make any inquiry whatsoever of any medical or scientific experts violated Dr. Higgason's civil rights under the Fourteenth Amendment to the United States Constitution in that it deprived him of his liberty without due process of law, in that no reasonable grounds existed for his arrest or incarceration, and no reasonable person in Benningfield's position would have believed there to be such grounds.

(J.A. at 29-30.) Basically, Plaintiff's due process allegations come down to a claim he was indicted without probable cause.

Qualified immunity grants government officials engaged in discretionary activities immunity from individual liability for civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a

prescriptions for her "nerve pills." One of Margie's physicians prescribed an anti-anxiety drug known as Ativan (generic name lorazepam); this drug belongs to the same group of anxiolytics as Serax – benzodiazepines. Margie had been prescribed several different anti-anxiety drugs belonging to the benzodiazepine group over the years.

Sharon found that if she gave Margie up to three capsules of Serax at a time, Margie would become sedated and Sharon would be free to take the car out driving unsupervised. Sharon frequently engaged in this practice because she enjoyed the freedom. However, the doses of Serax that Sharon gave to Margie were never life threatening. Serax is one of the mildest drugs in the benzodiazepine class, such that it would be virtually impossible to take a sufficient quantity to cause death or serious injury. Plaintiff's complaint states that "[a]ccording to lab data supplied to the medical community by Wyeth-Ayerst Pharmaceuticals, manufacturer of Serax, a minimum of 2500 15 mg. tablets administered orally as a single dose would have been necessary to be life threatening to someone of Mrs. Higgason's approximate size and weight." (J.A. at 14.) It is believed that Sharon fed Margie one-tenth of one percent of this amount.

Plaintiff states in his complaint that he has not given or fed any prescription medication to Margie, or any other drugs of any kind, and that he has no desire to harm Margie in any way. Plaintiff contends that on two occasions he saved Margie's life – once when she had colon cancer and once when she had breast cancer.

On or about October 7, 1997, Sharon allegedly fed Margie some Serax, and then took Margie to Dr. John W. Burress, in Campbellsville, Kentucky for an office visit. During the visit, Dr. Burress informed Margie that the would no longer be her physician because of her constant calling and overdramatized symptoms. Dr. Burress became aware that Margie was seeing multiple physicians for the purpose of obtaining prescriptions. Dr. Burress ordered a blood test for Margie to check for the presence of benzodiazepines. The test revealed that Margie

had Ativan in her system, which Burress had prescribed for her, but the test also revealed that Margie had Serax in her system, which Burress had not prescribed. The report indicated that the amount of Serax in Margie's blood was higher than the therapeutic dose, but not life threatening. Burress reported his findings to the Kentucky Department for Social Services in Greensburg, informing the agency that Margie had a high dose of Serax in her blood, and that he had not prescribed Serax for her.

The Department of Social Services began an investigation of the matter and ultimately referred the case to the Kentucky State Police. Defendant, Detective Benningfield, was assigned to investigate the matter. Benningfield contacted Margie, who allegedly suffered from, among other things, senile dementia and early Alzheimer's disease, and asked Margie to take Sharon to the Social Services office in Greensburg to meet with him. Margie complied, and after extensive questioning by Benningfield, Margie told him that she thought her net worth was about $200,000. Benningfield also extensively questioned Sharon, repeatedly suggesting that Sharon and Plaintiff were conspiring to kill Margie to collect on her estate. Based on statements made to him by Sharon, who Plaintiff claims was very intimidated by Benningfield as an armed male figure, Benningfield recommended that Plaintiff be charged with twelve counts of attempted murder of Margie. Thereafter, Bertram brought charges against Plaintiff.

Plaintiff alleges that on November 5, 1997, Benningfield presented perjured testimony before the grand jury of Green County, informing the grand jury that he believed that Sharon was competent to testify and that Plaintiff had given Margie the Serax in an attempt to kill her. Based on Benningfield's testimony, Plaintiff was indicted on all twelve counts of attempted murder. Plaintiff was arrested on November 6, 1997, jailed for ten days.

Over Bertram's objections, Plaintiff's bond was reduced from $100,000 to $10,000 on or about November 17, 1997.

(J.A. at 61-62).[1]

The district court dismissed Plaintiff's claims in Count II made against Benningfield for his allegedly untruthful testimony before the grand jury, on the basis that Benningfield was absolutely immune in this regard. The court opined that the "Sixth Circuit and the U.S. Supreme Court have held that 'witnesses in judicial proceedings are absolutely immune from civil liability und[er] 24 U.S.C. § 1983 based on their testimony, even if they knowingly gave perjured testimony.'" (J.A. at 58.)

Finally, the court dismissed Plaintiff's § 1983 claims against Commonwealth's Attorney Bertram on the basis that a prosecutor enjoys absolute prosecutorial immunity when he acts within the scope of his prosecutorial duties. (J.A. at 57.) The court opined, "[a]s Bertram is being sued for conducting his duties as a prosecutor, he is absolutely immune from suit under Count Two." (J.A. at 57.) Because the court dismissed Counts I and II of Plaintiff's complaint regarding his federal claims, the court declined to exercise supplemental jurisdiction over Plaintiff's state law claims, and the court denied Plaintiff's cross-motion for summary judgment as moot.

As a result of the district court's decision, Plaintiff filed the instant appeal claiming that 1) the court erred in finding that Plaintiff was estopped from raising his § 1983 claims regarding Benningfield's and Rose's investigation into the criminal matter by the Green Circuit Court order; 2) the court erred in finding that Bertram was absolutely immune; and 3) the court erred in denying Plaintiff's cross-motion for summary judgment against Benningfield. Although we find that the district court properly dismissed Plaintiff's claims as

---

[1]The district court failed to address Defendant Rose in its dismissal of Count II; however, because Plaintiff brought claims against Rose on the same basis as that of Benningfield, and because the district court ultimately dismissed Plaintiff's claims against all Defendants, it is proper to include Rose in the district court's analysis regarding Count II.

against Benningfield and Rose, and the issue of whether Benningfield and Rose were entitled to qualified immunity for their actions was moot.

Specifically, the district court opined in relevant part:

The issue of collateral estoppel binds this Court's analysis regarding probable cause in this case. The issue falls squarely under both components of this standard. This issue was actually litigated in a hearing before the Green Circuit Court, Plaintiff was allowed to present witnesses and cross-examine the Commonwealth's witnesses. In addition, Plaintiff had the option to continue to litigate the Green Circuit Court's finding of probable cause. He could have appealed this finding, but chose not to. It is an issue that could have been litigated, but was not.

The plaintiff concedes that he viewed the Green Circuit Court's findings as "surplussage [sic] to attempt to protect the local prosecutor and police officers from later litigation." Accepting the plaintiff's allegations as true, he was required to rectify this incorrect finding through an appeal in the state court system. Plaintiff cannot circumvent the state court system by filing suit in federal court. Hence, principles of collateral estoppel bind this Court, and no further investigation is necessary to conclude that probable cause existed for the arrest and indictment of Higgason.

Therefore, as probable cause has been established, it is unnecessary to explore the issue of qualified immunity. Plaintiff does not have a § 1983 cause of action against Benningfield for failure to investigate. Therefore, Count Two of the plaintiff's complaint is dismissed in its entirety.

Plaintiff was released from jail after posting bond, but kept under strict house arrest in Lexington, Fayette County, Kentucky for a period of eighteen months, when the charges against him were dismissed on March 10, 1999, after Plaintiff successfully passed a polygraph test. Because of the terms of his house arrest, Plaintiff claims that he was effectively unable to practice medicine during this time.

Defendant Barnett, who was identified as "spokesman" for the Kentucky State Police, was quoted in a November 8, 1997 article in the Lexington Herald Leader at the time of Plaintiff's arrest as saying that the "poisonings" of Margie took place in Green County and at Plaintiff's home in Lexington. Plaintiff claims that Barnett made these statements knowing that they were false or in reckless disregard for their truth or falsity. Barnett was further quoted in the article, as well as subsequent articles, making other alleged defamatory comments about Plaintiff.

During the pendency of his arrest and confinement, Plaintiff claims that he suffered severe stress and mental anguish as a result of being wrongfully accused. Plaintiff therefore began abusing prescription drugs, had suicidal ideations, and was finally hospitalized for treatment and detoxification. Plaintiff was successful in discontinuing the medications to which he had become addicted. However, Plaintiff's arrest and incarceration ended his opportunity for a new job offer and further prevented his work in an emergency room setting. Despite these adverse effects on his career, Plaintiff was financially sound, owning his vehicles and home, and having several thousand dollars in savings and investments.

In August of 1998, after two independent psychiatric reviews, Sharon was pronounced incompetent to stand trial, to participate in her own defense, or to testify. As a result, all charges against her were dismissed. Before Bertram would dismiss the charges against Plaintiff, however, he insisted that Plaintiff take a polygraph examination. Plaintiff willingly complied inasmuch as he had offered to take a polygraph examination from the outset of his arrest. Plaintiff took the

examination as administered by the Kentucky State Police, and passed. On March 10, 1999, the district court held an evidentiary hearing regarding the dismissal of the charges brought against Plaintiff. At this hearing, Benningfield was called and cross-examined by Plaintiff's defense counsel. Following the hearing, the Green Circuit Court entered an order dismissing all charges against Plaintiff with prejudice. In the order dismissing the charges against Plaintiff with prejudice, Judge Doughlas George of the Green Circuit Court found that

> after conducting a brief hearing, the Court finds that in order for there to be any finality in this matter, the indictment is to be dismissed with prejudice. The Court further finds that the Kentucky State Police, and more specifically, the detective in this case, followed normal and customary procedure in its investigation and in its presentation to the grand jury. The Court further finds that the grand jury made a finding of probable cause by returning an indictment against the Defendant and this Court finds that based on the evidence presented to the grand jury, probable cause existed for the grand jury to return a felony indictment against the Defendant.

(J.A. at 98.) Following this dismissal of the criminal charges brought against him, Plaintiff filed the instant suit on February 29, 2000.

## DISCUSSION

Plaintiff argues that the district court erred in dismissing his § 1983 action and in denying his motion for partial summary judgment, on the basis that the state criminal court's ruling on probable cause constituted res judicata or collateral estoppel for purposes of Plaintiff's civil rights claim. Plaintiff further argues that the district court erred in finding that Bertram was absolutely immune from suit.

We shall address each argument in turn; however, before doing so, we note the proper standard of review under which Plaintiff's claim should be heard is *de novo* inasmuch as the

district court looked beyond Plaintiff's complaint in adjudicating the case. *See* FED. R. CIV. P. 12(b) ("[I]f . . . matters outside the pleading are presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."); *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998) (finding that when a district court considers matters outside the pleadings in rendering its decision on a motion to dismiss, the court is dismissing the case as one for summary judgment pursuant to Fed. R. Civ. P. 56). Although Plaintiff makes note of the fact that the dismissal of his claim was before discovery had taken place, Plaintiff does not argue that the district court failed to provide him with the opportunity to present evidence in opposition to Defendants' motions to dismiss, and agrees that the district court's ruling should be viewed as one for summary judgment under Rule 56.

### A.  District Court's Opinion

On appeal, Plaintiff does not challenge the district court's dismissal of his claim for injunctive relief against Defendant Stephens under Count I. Rather, Plaintiff limits his claims on appeal to Count II of his complaint, the § 1983 action wherein Plaintiff named Defendants Benningfield, Rose, and Bertram.

Regarding Count II, the district court found that Plaintiff's claims against Benningfield and Rose (although the district court did not expressly name Rose in its opinion), were barred under the doctrine of collateral estoppel. The district court found that the Green Circuit Court's finding of probable cause in its order dismissing Plaintiff's criminal charges had to be given preclusive effect such that Plaintiff's § 1983 claim, that Benningfield and Rose violated his right to due process for their roles in the investigation of the criminal matter, was barred. Because the issue of whether the investigators acted with probable cause had been established, the district court held that Plaintiff did not have a § 1983 cause of action