**Michael GOULD, Plaintiff,**

v.

**John SYMONS, Mike Schrems, Allen Rabideau, Scott Bickel, Chester Allen, and Pat Doolan, Defendant.**

No. 01–10026–BC.

United States District Court, E.D. Michigan, Northern Division.

July 18, 2003.

Michael B. Gould, Saginaw, MI, Pro se.

Thomas H. Fancher, City Attorney's Office, Peter C. Jensen, Currie, Kendall, Saginaw, MI, for Defendant.

*OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR RESOLUTION OF A LEGAL ISSUE, AND REFERRING CASE TO UNITED STATES MAGISTRATE JUDGE FOR GENERAL CASE MANAGEMENT*

LAWSON, District Judge.

Before the Court is the report of Magistrate Judge Charles E. Binder recommending that the plaintiff's motion for summary judgment and prayer for relief be denied because it is premature, defendants' motion for summary judgment be denied because the defendants are not entitled to qualified immunity, and the plaintiff's motion for resolution of a legal issue be denied because it is moot. The defendants filed timely objections to the recommendation. The plaintiff, however, did not file objections and, therefore, the plaintiff's motions for summary judgment and to resolve a legal issue will be denied for the reasons stated in the Report and Recommendation of the magistrate judge. *See Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (holding that the failure to object to the magistrate judge's report releases the court from its duty to independently review the motion).

After conducting a *de novo* review of the motion papers, the Report and Recommendation, and the defendants' objections, the Court agrees with the magistrate judge that the defendants have failed to establish that they are entitled to qualified immunity from suit. Therefore, the Court will adopt the report, deny the defendants' motion, and refer the case to the magistrate judge for further proceedings.

## I.

In 2000, the defendants, who are Saginaw city officials, removed a 1948 REO Speedwagon truck, which was in a state of gradual restoration, from the plaintiff's fenced, residential yard. The seizure of the plaintiff's property, under the authority of the city's abandoned property ordinance, was made without benefit of a warrant or other judicial authorization. On January 12, 2001, the plaintiff, acting *pro se,* filed a complaint in this Court alleging that his federal constitutional rights under the Fourth, Fifth, Seventh, Ninth and Fourteenth Amendments were violated, and that city officials had no authority to enforce land use laws concerning his property because he traced his ownership to a federal land patent. The defendants filed a motion for summary judgment and claimed, among other things, that no warrant was necessary, arguing that their role in abating nuisances constituted an exception to the warrant requirement, and the administrative condemnation procedures they were required to follow provide protection equivalent to the disinterested review of a neutral and detached magistrate, thereby rending the Fourth Amendment warrant requirement redundant and the warrantless seizure reasonable. The motion was referred to the magistrate judge, who filed a report recommending that the Court grant the defendant's summary judgment motion as to all of the claims except the plaintiff's claim that the defendants violated the Fourth Amendment by seizing the plaintiff's property without a warrant.

On September 5, 2002, the Court adopted the report and concluded that the defendants' conduct did not constitute an exception to the warrant requirement. The Court further concluded that

> the city's procedure does not amount to a constitutionally equivalent substitute for a warrant to seize personal property

from private residential property. The seizure without a warrant in this case was unreasonable. The plaintiff's truck was seized from his homestead. There was no warrant, no consent, and exigent circumstances did not exist. The undisputed facts demonstrate, therefore, that the plaintiff's rights under the Fourth Amendment were violated.

*Gould v. Symons,* No. 01–10026, 2002 WL 2031563, at *8 (E.D.Mich.2002). The Court granted in part and denied in part the defendants' motion for summary judgment and dismissed with prejudice the plaintiff's claims based on a federal land patent claim and the claims under the Fifth, Seventh, Ninth, and Fourteenth Amendments. The Court also granted partial summary judgment to the plaintiff and entered judgment of liability, interlocutory in nature, against the defendants on the plaintiff's Fourth Amendment claim. The Court, recognizing the plaintiff's *pro se* status, construed the complaint to include a demand for money damages, although the plaintiff had not prayed for a specific remedy in any form. Therefore, the Court scheduled a status conference pursuant to Federal Rule of Civil Procedure 16 to discuss further proceedings.

On September 23, 2003, the Court conducted the status conference with the plaintiff and counsel for the defendants. At the conference, the Court granted the defendants leave to file a motion asserting the defense of qualified immunity as it relates to damages. On October 24, 2002, the defendants filed another motion for summary judgment asserting the defense of qualified immunity. The Court referred the motion to the magistrate judge.

In his Report and Recommendation, the magistrate judge suggested that the Fourth Amendment's prohibition on warrantless searches and seizures of personal property from an area in which the prop-

erty owner has a legitimate right to privacy, absent consent or exigent circumstances, was a clearly established principle of law and, therefore, the defendants were not entitled to qualified immunity. The magistrate judge primarily relied on Supreme Court cases to support this view. *See Oliver v. United States,* 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (holding that the Fourth Amendment extends to the area immediately surrounding a residence); *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) (holding that public officials who work to abate a suspected public nuisance are subject to the dictates of the Fourth Amendment); *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977); *Camara v. Municipal Ct. of San Francisco,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Moreover, the magistrate judge suggested that a 1990 Ninth Circuit case that was summarized in his earlier Report and Recommendation demonstrates that the law in this area is clearly established. *See Conner v. City of Santa Ana,* 897 F.2d 1487 (9th Cir.1990) (city official's actions violated the Fourth Amendment where they broke down the plaintiff's fence, entered his property, and seized inoperable vehicles which had been determined a nuisance, regardless of how "reasonable" the warrantless search and seizure appeared in light of the pre-seizure process afforded the plaintiff). Therefore, the magistrate judge recommended that the Court deny the defendants' motion for summary judgment.

In their objections to the report, the defendants contend the law in this area is not clearly established and, as a result, a reasonable government official would not have known that seizing personal property without a warrant to abate a nuisance would violated an individual's constitutional rights. The defendants also argue that the magistrate judge failed to find any evidence that the defendants violated the plaintiff's constitutional rights. The defendants point to the Fifth Circuit's decision in *Freeman v. City of Dallas,* 242 F.3d 642 (5th Cir.2001), which held that Dallas' nuisance abatement administrative scheme established the superfluity of the warrant clause, and that the seizure and destruction of the plaintiff's dilapidated buildings were reasonable. The defendants argue that, based on the *Freeman* holding, there was justification for their belief that they could seize the plaintiff's truck without a warrant. Because there is a conflict among the circuits, the defendants argue that the law is unclear on whether public officials who seize property for nuisance abatement need to obtain a search warrant. Accordingly, the defendants contend that qualified immunity should be afforded in this case.

## II.

Government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see Scott v. Clay County, Tenn.,* 205 F.3d 867, 873 n. 9 (6th Cir.2000) (finding that public employees are entitled to qualified immunity when engaged in discretionary functions). In determining whether a government official is entitled to qualified immunity, the Court applies a three-part test. *Higgason v. Stephens,* 288 F.3d 868, 876 (6th Cir.2002); *Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir.1999) (en banc). First, the plaintiff must show a violation of a constitutionally protected right. *Higgason,* 288 F.3d at 876. "The second inquiry is whether that right was clearly established at the time such that a reasonable official would have

understood that his behavior violated that right." *Ibid.* Finally, the Court must determine "whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established rights." *Williams,* 186 F.3d at 691.

■ In this case, the plaintiff has shown, and the Court has determined, that the defendants violated the plaintiff's constitutionally protected rights. The inquiry, therefore, is whether the plaintiff's rights were clearly established at the time of the violation under an objective standard. For a constitutional right to be clearly established, "the law must be clear in regard to the official's particular actions in the particular situation." *Long v. Norris,* 929 F.2d 1111, 1114 (6th Cir.), *cert. denied,* 502 U.S. 863, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991); *see also Walton v. City of Southfield,* 995 F.2d 1331, 1335 (6th Cir.1993). This requires that

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citations omitted). "Thus, the particular conduct of the official must fall clearly within the area protected by the constitutional right, such that a reasonable official would have known that his or her conduct violated the constitutional right." *Walton,* 995 F.2d at 1336; *see Adams v. Metiva,* 31 F.3d 375, 386 (6th Cir.1994) ("key inquiry in analyzing a claim of qualified immunity is whether the defendant's alleged conduct is whether the defendant's alleged conduct

violated clearly established statutory or constitutional rights of which a reasonable person would have known."). "This 'objective reasonableness' standard focuses on whether defendants reasonably could have thought that their actions were consistent with the rights that plaintiff claims have been violated." *Walton,* 995 F.2d at 1336 (citing *Garvie v. Jackson,* 845 F.2d 647, 649 (6th Cir.1988)).

In inquiring whether a constitutional right is clearly established, the court must "look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Daugherty v. Campbell,* 935 F.2d 780, 784 (6th Cir. 1991), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992).

> [I]n the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals or itself. In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law. For the decisions of other courts to provide such "clearly established law," these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting.

*Ohio Civil Serv. Employees Ass'n v. Seiter,* 858 F.2d 1171, 1177 (6th Cir.1988). "Thus, it is only in extraordinary cases that we can look beyond Supreme Court and Sixth Circuit precedent to find 'clearly established law.'" *Walton,* 995 F.2d at 1336.

■ In this case, the Court agrees with the magistrate judge's assessment that the

defendants' conduct violated clearly established law. Although there is no decision in this Circuit finding a violation of constitutional rights by city officials who seize property under a city's abandoned property ordinance without a warrant or other judicial authorization, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2516, 153 L.Ed.2d 666 (2002). As the Supreme Court explained in *Lanier:*

> In some circumstances, as when an earlier case expressly leaves open whether a general rule applies to the particular type of conduct at issue, a very high degree of prior factual particularity may be necessary. But general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful.

*Lanier,* 520 U.S. at 270–71, 117 S.Ct. 1219. *See also Stemler v. City of Florence,* 126 F.3d 856, 867 (6th Cir.1997) ("The fact that the law may have been unclear, or even hotly disputed, at the margins does not afford state actors immunity from suit where their actions violate the heartland of the constitutional guarantee, as that guarantee was understood at the time of the violation.").

The Court finds that a general constitutional rule of law applies with obvious clarity to the specific conduct in question in this case. The defendants' actions fall clearly within the area protected by the Fourth Amendment, such that a reasonable official would have known that removing personal property from an individual's fenced, residential yard without authorization by a "neutral and detached magistrate," *see Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948), without the individual's consent, *see Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), or without exigent circumstances, *see Mincey v. Arizona,* 437 U.S. 385, 392–93, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), would violate the individual's constitutional rights. *See also Tyler,* 436 U.S. at 504–07, 98 S.Ct. 1942; *G.M. Leasing,* 429 U.S. at 354, 97 S.Ct. 619; *Camara,* 387 U.S. at 530, 87 S.Ct. 1727.

Furthermore, the defendants actions were objectively unreasonable. Although the defendants argue that they were acting pursuant to a city ordinance, and therefore their actions must be considered reasonable, this argument is unavailing because the ordinance does not provide that city officials may proceed onto private property without a warrant to abate a nuisance, but rather states that "the Enforcement Officer may cause the item or items of abandoned property or building materials to be removed, destroyed and/or disposed of . . . ." Saginaw General Code, Art. V. § 508.3. This provision can be fairly read to anticipate that city officials will choose a method of "causing the item to be removed" that is lawful, such as obtaining a search warrant, or commencing adversary proceedings in a court, and will not act under the authority of the ordinance alone. As the magistrate judge stated, the qualified immunity doctrine is meant to shield an official from liability where that "official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727. In this case, there have been no subsequent legal developments in the law; rather, the law, clearly established by the Supreme Court, plainly demonstrates that the defendants' actions violate the Fourth Amendment. The de-

fendants reasonably could not have thought that Saginaw's abandoned property ordinance was sufficient authorization to seize the plaintiff's property from the confines of his fenced yard, or that their actions were consistent with the rights that the plaintiff claims have been violated. *See Walton,* 995 F.2d at 1336. Therefore, the defendants are not entitled to qualified immunity.

The defendants reliance on *Freeman* to establish that the law in this area was not established is unfounded. As the Court noted in its earlier opinion, the facts of this case are markedly different than the facts in *Freeman.* The seizure in this case took place on the authority of a field inspector exercising his discretion to decide if the ordinance had been violated. Unlike *Freeman,* the authority to seize the items was not adequately circumscribed by standards, nor was there opportunity for review by some official not connected to the same branch of government with which the field inspector was associated. Moreover, the city's procedures included no right to appeal the decision to an administrative or judicial body. Under these circumstances, the defendants' seizure of the plaintiff's truck without a warrant violated clearly established constitutional rights of which a reasonable person should have known. The *Freeman* case, therefore, does not show that the law is unclear in this area.

### III.

The defendants are not entitled to qualified immunity. Therefore, their motion for summary judgment must be denied.

Accordingly, it is **ORDERED** that the defendants' objections to the Report and Recommendation of the Magistrate Judge are **OVERRULED,** and the recommendation of the Magistrate Judge is **ADOPTED** for the reasons set forth herein.

It is further **ORDERED** that the defendants' motion for summary judgment [dkt # 63] is **DENIED.**

It is further **ORDERED** that the plaintiff's motion for to strike objections by defendants and for summary judgment [dkt # 52] is **DENIED.**

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt # 58], is **DENIED** as premature, and the plaintiff's motion for resolution of a legal issue [dkt # 66], is **DENIED** as moot for the reasons stated in the Report and Recommendation of the magistrate judge.

It is further **ORDERED** that this case is referred to United States Magistrate Judge Charles E. Binder for general case management in accordance with the authority conferred in 28 U.S.C. § 636(b).

It is further **ORDERED** that the Magistrate Judge shall inform the parties of their rights and options to consent to the Magistrate Judge conducting all proceedings, including trial, under 28 U.S.C. § 636(c). The Magistrate Judge shall inform the parties that they are free to withhold consent without adverse substantive consequences. *See* 28 U.S.C. § 636(c)(2).

It is further **ORDERED** that, in the event the parties withhold consent under 28 U.S.C. § 636(c), upon completion of all pretrial proceedings as set forth herein (including the issuance of a Report and Recommendation on dispositive motions, if any are filed), the Magistrate Judge shall certify in writing to the Court that the matter is ready for trial, if such is the case.