RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0104p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JOHN PETSCHE,

　　　　　　　　　　*Plaintiff-Appellant*,

　　　*v.*

JERRY N. HRUBY; DAVID J. MATTY; GERALD F. BROSKI; LOUIS N. CAROUSE, JR.; LAURA REDINGER; KIMBERLY VERAS; CITY OF BRECKSVILLE, OHIO,

　　　　　　　　　　*Defendants-Appellees*.

No. 25-3323

───────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:23-cv-00554—Bridget Meehan Brennan, District Judge.

Argued:  March 18, 2026

Decided and Filed:  April 3, 2026

Before:  GILMAN, KETHLEDGE, and HERMANDORFER, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:**  Zoran Balac, THE PATTAKOS LAW FIRM LLC, Fairlawn, Ohio, for Appellant. Frank H. Scialdone, MAZANEC, RASKIN & RYDER CO., L.P.A., Cleveland, Ohio, for Appellees.  **ON BRIEF:**  Zoran Balac, Peter Pattakos, THE PATTAKOS LAW FIRM LLC, Fairlawn, Ohio, for Appellant.  Frank H. Scialdone, John T. McLandrich, Edmond Z. Jaber, MAZANEC, RASKIN & RYDER CO., L.P.A., Cleveland, Ohio, for Appellees.

───────────────

## OPINION

───────────────

RONALD LEE GILMAN, Circuit Judge.  John Petsche, a former member of the Brecksville, Ohio City Council (the City Council), filed this 42 U.S.C. § 1983 civil rights action

after being prosecuted for participating in votes to build a new police station in which he had a financial interest as the roofing subcontractor.  Such conduct is an offense under Ohio law.  Although Petsche was indicted by a grand jury, he was ultimately acquitted after a bench trial.

Petsche alleged that Brecksville Mayor Jerry N. Hruby and Law Director David J. Matty, in collusion with Brecksville City Councilmembers Gerald F. Broski, Louis N. Carouse, Jr., Laura Redinger, and Kimberly Veras (collectively, the individual defendants), submitted false statements and omitted material information in their communications to the Ohio Ethics Commission, all in retaliation for Petsche's criticism of how the City Council had recently handled the payment of an unrelated debt.  Petsche alleged that Mayor Hruby's and Law Director Matty's communications set in motion an investigation by the Ohio Ethics Commission and the Commission's eventual referral of the matter to the Cuyahoga County Prosecutor's Office, all of which resulted in Petsche being indicted by a grand jury.  He also brought municipal-liability claims against the City of Brecksville (the City), alleging that the actions taken by Mayor Hruby, Law Director Matty, and the named city councilmembers constituted an official policy of retaliation and an official policy of malicious prosecution.

The individual defendants and the City moved for summary judgment, which the district court granted on all claims.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.   BACKGROUND

### A.    Factual background

#### 1.   *The USA Roofing subcontract and Petsche's votes as a city councilmember*

Petsche contends that his ownership of USA Roofing, Inc. (USA Roofing) was well-known by numerous City officials.  According to Petsche, Law Director Matty and Mayor Hruby have known of Petsche's ownership since at least 2007 and 2013, respectively.  And Councilmembers Redinger and Veras testified in depositions that they knew that Petsche was in the roofing business.

In the fall of 2017, the City Council awarded Panzica Construction Co. (Panzica Construction) a contract to build a new police station, and Panzica Construction selected USA Roofing as the roofing subcontractor. Petsche signed the subcontract with Panzica Construction on December 7, 2017.

On November 28, 2017, Petsche was elected to the City Council, and he was sworn in on January 2, 2018. Petsche never disclosed his financial interest in the police-station project to the City Council. But he voted on multiple ordinances as a city councilmember that enabled the project to proceed.

In April 2018, he voted in favor of issuing $100,000 in notes (in anticipation of issuing bonds) to finance, in part, the police-station project. Then, in May 2018, he voted in favor of issuing and selling up to $2 million in bonds "for the purpose of paying costs of constructing, furnishing and equipping" the police station. Petsche also voted, in August 2018, in favor of an ordinance related to a proposal by an architectural firm for services regarding the project. Finally, he voted to approve a budget increase for the project in March 2019.

In August 2018, a change order modifying the terms of the police-station contract was submitted to Mayor Hruby for review. While reviewing the change order, Mayor Hruby noticed that USA Roofing was listed as the roofing subcontractor, and he recognized that this was Petsche's company.

Mayor Hruby investigated further. He requested Petsche's 2017 Ohio Financial Disclosure Form and spoke with Becki Riser, who was the City's point of contact with Panzica Construction on the police-station project. Mayor Hruby received a list of subcontractors involved with the police-station project from Riser. On at least one of these documents, "USA" (not "USA Roofing") was listed as the subcontractor providing roofing services.

### 2. *Petsche's speech*

As of August 2018, the City carried a $680,000 debt related to the construction of water and sewer lines in the Four Seasons neighborhood, an expensive residential development where Councilmember Veras and former City Council President Mike Harwood lived. The cost of the

construction was supposed to be paid for by the residents of the Four Seasons neighborhood. But due to an administrative error, the residents were undercharged, which resulted in an outstanding debt. When the City Council considered how to handle the $680,000 debt in early September 2018, it voted to pay off the debt using the City's funds. Petsche voted against the measure and spoke out about the lack of transparency in the City Council's dealings, which generated media coverage.

### 3. Mayor Hruby and Law Director Matty refer Petsche to the Ohio Ethics Commission

On September 12, 2018, approximately a week after the above City Council vote and media coverage, Mayor Hruby consulted with Law Director Matty about Petsche's police-station subcontract, and that same date submitted a letter to the Ohio Ethics Commission alleging that Petsche had violated Ohio Revised Code § 2921.42(A). The statute prohibits public officials from financially benefiting from public contracts. This caused the Commission to open an investigation into Petsche's conduct sometime before November 2018.

In February 2019, the City Council, at an executive session, discussed the letter that Mayor Hruby had sent to the Ohio Ethics Commission about Petsche. All of the individual defendants were in attendance, but Petsche was not.

The Ohio Ethics Commission interviewed each of the individual defendants other than Law Director Matty between February and May 2019. Also in May 2019, Law Director Matty submitted a memo to the Ohio Ethics Commission about Petsche's potential violation of Ohio law. After concluding its investigation, the Commission referred the matter to the Cuyahoga County Prosecutor's Office in September 2019.

### 4. Indictment and prosecution of Petsche

In June 2020, Petsche was indicted by a grand jury on four counts of having an unlawful interest in a public contract, in violation of Ohio law. Law Director Matty communicated with representatives of the Prosecutor's Office after Petsche was indicted. Petsche was ultimately acquitted of all charges following a bench trial in March 2022.

**B. Procedural background**

In March 2023, Petsche asserted claims under 42 U.S.C. § 1983 against the individual defendants and the City.  He alleged retaliatory prosecution, in violation of the First Amendment; malicious prosecution, in violation of the Fourth Amendment; and fabrication and falsification of evidence, in violation of the Due Process Clauses in the Fifth and Fourteenth Amendments. Petsche also alleged a state-law malicious-prosecution claim against the individual defendants and the City.

The individual defendants and the City moved for summary judgment, which the district court granted in their favor on all claims.  This timely appeal followed, which Petsche has limited to his § 1983 retaliatory-prosecution and malicious-prosecution claims.

## II.   ANALYSIS

**A. Standard of review**

This court reviews the district court's grant of summary judgment de novo.  *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute of a material fact is genuine so long as the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (cleaned up).  "When evaluating a motion for summary judgment, this [c]ourt views the evidence in the light most favorable to the party opposing the motion."  *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "This includes drawing all justifiable inferences in the nonmoving party's favor."  *Id.* (cleaned up).

**B. Petsche's claims against the individual defendants fail because Petsche is unable to rebut the presumption of probable cause arising from his indictment by a grand jury**

To prevail on his claim that he was prosecuted in retaliation for exercising his First Amendment rights, Petsche must demonstrate that (1) he "engaged in a constitutionally protected activity," (2) the individual defendants' actions caused Petsche "to suffer an injury that would

likely chill a person of ordinary firmness" from continuing that protected activity, and (3) the individual defendants were motivated, at least in part, by Petsche's "exercise of his constitutional rights." *See Novak v. City of Parma*, 932 F.3d 421, 427 (6th Cir. 2019) (quoting *Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010)).

Petsche's key argument is that the individual defendants "were aware of Petsche's interest in the police station roofing subcontract and deliberately withheld that knowledge to bring about his prosecution in retaliation for his political speech." Because Petsche alleges that the defendants were officials "who may have influenced the prosecutorial decision but did not . . . make it" themselves, Petsche "must show that the . . . official[s] acted in retaliation, and must also show that [they] induced the prosecutor to bring charges that would not have been initiated without [their] urging." *See Hartman v. Moore*, 547 U.S. 250, 262 (2006). This requires the plaintiff to show the absence of probable cause to support the prosecution. *Id.* at 263*; see also Bickerstaff v. Lucarelli*, 830 F.3d 388, 399 (6th Cir. 2016).

To prove malicious prosecution, Petsche must similarly show the absence of probable cause to support the charges against him. *See Sykes v. Anderson*, 625 F. 3d 294, 308–09 (6th Cir. 2010). The other elements of a malicious-prosecution claim are: (1) "a criminal prosecution was initiated against the plaintiff and . . . the defendant ma[d]e, influence[d], or participate[d] in the decision to prosecute," (2) "the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure," and (3) "the criminal proceeding . . . [was] resolved in the plaintiff's favor." *Id.* (cleaned up).

Petsche was indicted by a grand jury in January 2020. Typically, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) (quoting *Ex parte United States*, 287 U.S. 241, 250 (1932)).

But this court has recognized a narrow exception to this general rule, holding that a plaintiff can rebut probable cause where he puts forth substantial evidence that the indictment was tainted. *See, e.g.*, *Mills v. Barnard*, 869 F.3d 473, 480–81 (6th Cir. 2017). In the

malicious-prosecution context, the presumption of probable cause arising from a grand-jury indictment is rebuttable "where (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony. . . ." *King*, 852 F.3d at 587–88.

Similarly, in the retaliatory-prosecution context, this court has implied that probable cause can be rebutted where an indictment is tainted. *See Bickerstaff*, 830 F.3d at 399 ("Given that [the plaintiff] has alleged no specific facts to undermine the validity of her indictment, her retaliation claim . . . fails.").

Petsche attempts to rebut probable cause by pointing to what he contends were false statements and omitted material information contained in Mayor Hruby's letter and Law Director Matty's memo sent to the Ohio Ethics Commission. He argues that the letter and the memo constitute "the deliberate suppression of Defendants' knowledge" that Petsche owned USA Roofing and was the subcontractor on the police-station project. This suppression, he contends, "provides a sufficient evidentiary basis for a jury to conclude that probable cause was manufactured."

Petsche was indicted for violating Ohio Revised Code § 2921.42(A)(1), which prohibits public officials from "knowingly . . . [a]uthoriz[ing] . . . or employ[ing] the authority or influence of the public official's office to secure authorization of any public contract in which the public official, a member of the public official's family, or any of the public official's business associates has an interest." He does not contest that, in the absence of an affirmative defense, his conduct would have violated the statute. Instead, he argues that the individual defendants misled the Ohio Ethics Commission about the applicability of § 2921.42(C), which is an affirmative defense to the charge under Ohio law. *See Sun Bldg. Ltd. P'Ship v. Value Learning & Teaching Acad., Inc.*, 175 N.E.3d 10, 23 (Ohio Ct. App. 2021).

The affirmative defense has four elements, all of which must be satisfied. *See State ex rel. Mallory v. Pub. Empls. Ret. Bd.*, 694 N.E.2d 1356, 1363 (Ohio 1998) (noting that § 2921.42(C) is a "stringent four-part test"). Petsche argues that Mayor Hruby's letter and Law Director Matty's memo to the Ohio Ethics Commission made it appear that element (4) of the affirmative defense was not established, when in fact the transaction in question took place "with full knowledge by the political subdivision or governmental agency or instrumentality involved." Ohio Rev. Code § 2921.42(C)(4). But his argument does not address the second half of element (4):

> (4) The entire transaction is conducted at arm's length, with full knowledge by the political subdivision or governmental agency or instrumentality involved, of the interest of the public official, member of the public official's family, or business associate, **and the public official takes no part in the deliberations or decision of the political subdivision or governmental agency or instrumentality with respect to the public contract.**

*Id.* (emphasis added).

Ohio courts have not had occasion to apply § 2921.42(C)(4) to circumstances such as those presented here, where a public official voted on city ordinances that permitted a public contract—on which his company was a subcontractor—to move forward. But the Ohio Ethics Commission has issued relevant opinions, which are persuasive authority under Ohio law. *See State v. Mieckowsk*, 115 N.E.3d 758, 768 (Ohio Ct. App. 2018) ("Ethics Commission opinions can be used as persuasive authority on the requirements of a statute.").

According to the Ohio Ethics Commission, a public official acting as a subcontractor on a public contract has an "interest in the . . . general contract." Ohio Ethics Comm'n, Advisory Op. No. 82-007, 2 (Nov. 18, 1982). Petsche therefore cannot avail himself of the affirmative defense under § 2921.42(C) unless he can show that he refrained from "discussing, deliberating about, recommending, voting on, or taking any other action . . . with respect to [the construction] project[]." *See* Ohio Ethics Comm'n, Informal Op. No. 2004-INF-1008-2, 8 (Oct. 8, 2004). But he plainly failed to fit within the requirements of § 2921.42(C)(4) because he voted on multiple ordinances that permitted the police-station project to move forward. He therefore has no basis to rely on the affirmative defense.

Petsche complains, however, that the district court failed to draw all reasonable inferences in his favor, and that it made credibility determinations that are improper on a motion for summary judgment.  These allegations concern the district court's conclusion that the named city councilmembers were "unaware of any . . . connection" between Petsche and USA Roofing "until after the [Ohio Ethics Commission] investigation began," and the court's failure to "draw the reasonable inference that [Mayor] Hruby['s] and [Law Director] Matty's omission of their knowledge from communications with the [Ohio Ethics Commission] and prosecutors was intentional."

The problem with Petsche's argument is that the district court's analysis regarding the individual defendants' knowledge or lack thereof goes solely toward the applicability of Petsche's affirmative defense under § 2921.42(C).  And because his affirmative defense under that statute has no merit for the reasons discussed above, any possible error regarding the inferences drawn by the district court is harmless.

For all of these reasons, Petsche has failed to rebut the presumption of probable cause established by his indictment by a grand jury.  His § 1983 retaliatory-prosecution and malicious-prosecution claims against the individual defendants therefore fail.

## C.  Petsche's retaliation claim against the City fails because this case is legally and factually distinguishable from *Lozman v. City of Riviera Beach*

This leaves Petsche's retaliatory-prosecution claim against the City.  He argues that his prosecution was caused by the City's official policy of retaliating against him for his speech.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Although Petsche asserted below that the City also engaged in an official policy of malicious prosecution, he has not challenged the district court's grant of summary judgment in favor of the City on that claim.  He has therefore forfeited any such challenge.  *See Bickerstaff*, 830 F.3d at 396–97.

A plaintiff must demonstrate a lack of probable cause in order to establish that he was prosecuted in retaliation for his speech.  *See Hartman*, 547 U.S. at 262.  But Petsche argues that under *Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018), the existence of probable cause to prosecute him does not bar his claim against the City.

In *Lozman*, the plaintiff (Fane Lozman) was "an outspoken critic" of city "councilmembers, the mayor, and other public employees," and he had filed a lawsuit alleging that the city had violated Florida law. *Id.* at 91. The city council held a closed-door session where, per the meeting transcript, Councilmember Elizabeth Wade "suggested that the City use its resources to 'intimidate' Lozman and others who had filed lawsuits against the City." *Id.* "[A] different councilmember asked whether there was 'a consensus of what Ms. Wade [was] saying' and others responded in the affirmative." *Id.* Lozman alleged that "these remarks formed an official plan to intimidate him." *Id.*

Five months later, Lozman attended a city council meeting and gave remarks at the podium about the arrest of a former county official. *Id.* at 92. "Councilmember Wade interrupted Lozman, directing him to stop," but Lozman "continued speaking, this time about the arrest of a former official" from a nearby city. *Id.* "Wade then called for the assistance of the police officer in attendance." *Id.* "The officer approached Lozman and asked him to leave the podium." *Id.* When Lozman refused, "Wade told the officer to 'carry him out.'" *Id.* The officer then "handcuffed Lozman and ushered him out of the meeting." *Id.*

Lozman conceded that the officer had probable cause to arrest him for the crimes of disorderly conduct and resisting arrest without violence. *Id.* at 95. But the Supreme Court held that, because Lozman alleged that "high-level policymakers adopted a plan to retaliate against him for protected speech and then ordered his arrest when he attempted to make remarks during the public-comment portion of a city council meeting," probable cause did not defeat Lozman's claim. *Id.* at 90–91, 99–101. The Court explained that "Lozman's claim [was] far afield from the typical retaliatory arrest claim," and specifically tied its holding to "facts like these." *Id.* at 99, 101. It emphasized that Lozman had presented "objective evidence" of a policy motivated by retaliation—"a transcript of a closed-door city council meeting and a video recording of his arrest." *Id.* at 100.

*Lozman* is both legally and factually distinguishable from the case before us. The *Lozman* case involved a retaliatory *arrest*, with allegations that the "City, through its legislators, formed a premeditated plan to intimidate him in retaliation for his criticisms of city officials and his open-meetings lawsuit . . .[,] and the City itself, through the same high officers, executed that

plan by ordering his arrest." *Id.* at 100. Here, Petsche brings a retaliatory-*prosecution* claim alleging that city officials, in retaliation for his speech, set in motion a chain of events that ended with Petsche's formal indictment by a grand jury at the request of a prosecutor.

"'[I]n the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties.'" *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15 (1926)). This presumption of regularity accorded to prosecutorial decision-making explains why a plaintiff claiming retaliatory prosecution is required to prove "an absence of probable cause." *Hartman*, 547 U.S. at 265. Such proof also helps "bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action." *Id.* at 264. Perhaps for those reasons, the Supreme Court has not extended *Lozman*'s retaliatory-arrest rule to the retaliatory-prosecution context. So we remain bound by the default rule requiring a retaliatory-prosecution plaintiff to demonstrate a lack of probable cause. *See id.* at 265–66.

Moreover, even if Petsche were not required to show the absence of probable cause, he has put forth no evidence that undermines the presumption of regularity by the prosecutor. This materially distinguishes this case from the circumstances in *Lozman*.

Lozman also presented "smoking gun" evidence of an official policy of retaliation—a transcript of a city council meeting in which the councilmembers explicitly agreed to retaliate against him. *Lozman*, 585 U.S. at 100–101. Petsche has proffered no comparable evidence.

*Lozman* therefore does not excuse Petsche from the requirement that he rebut probable cause. *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1307 (11th Cir. 2019) ("[B]ecause the factual circumstances in *Lozman* are so materially distinguishable from this case [in which the plaintiff alleged that the government had filed a civil lawsuit against him in retaliation for his speech] . . . [,] we conclude that *Lozman*'s exception to the no-probable cause requirement does not help [the plaintiff's] First Amendment retaliation claim, even if it were potentially applicable."). And because Petsche has failed to rebut the presumption of probable cause established by his indictment by a grand jury, his claim against the City fails.

## III.   CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.