Alex C. BAKOS; Kimberly J. Bakos; Ted R. Turner; Plaintiffs–Appellees;

v.

CITY OF OLMSTED FALLS, et al.,; Defendants;

Thomas C. Jones; Richard W. Krusinski; Thomas Caine; Daniel R. Gilles; Defendants–Appellants.

No. 02–3399.

United States Court of Appeals, Sixth Circuit.

Aug. 19, 2003.

BEFORE: KEITH, COLE, and COOK, Circuit Judges.

## OPINION

COLE, Circuit Judge.

In this interlocutory appeal, Individual Defendants–Appellants Thomas C. Jones, Richard W. Krusinski, Thomas Caine, and Daniel R. Gilles appeal the denial of their motion for summary judgment on their qualified immunity defense in this action alleging that Defendants violated 42 U.S.C. § 1983 by infringing Plaintiffs' rights under the Fourth and First Amendments. For the reasons discussed herein, we RE-VERSE the district court's denial of qualified immunity on the Fourth Amendment claim and AFFIRM the denial of summary judgment on the First Amendment claim.

## I. BACKGROUND

### A. Procedural Background

Plaintiffs originally brought this action against the City of Olmsted Falls (the "City") and individual City employees in the Cuyahoga County Court of Common Pleas. Defendants removed the case to the United States District Court for the Northern District of Ohio. Eastern Division. Plaintiffs' Amended Complaint asserts the following claims: (1) violation of 42 U.S.C. § 1983 through infringement of their First and Fourth Amendment rights; (2) false arrest in violation of Ohio law; (3) malicious prosecution in violation of Ohio law; (4) retaliation in violation of Ohio public policy; (5) intentional infliction of emotional distress in violation of Ohio law; and (6) loss of consortium.

On June 18, 2001, Defendants filed a motion for summary judgment, arguing, *inter alia,* that the individual Defendants are entitled to qualified immunity. The district court referred the motion for summary judgment to a magistrate judge, who issued a report and recommendation on December 20, 2001.[1] On March 13, 2002, the district court entered a Memorandum and Order granting in part and denying in part Defendants' motion for summary judgment.[2]

### B. Factual Background

Plaintiffs Alex Bakos and Ted Turner are police officers for the City of Olmsted Falls Police Department (the "Department"). During the relevant time period for purposes of this appeal. Defendant Thomas C. Jones was mayor of the City. Defendant Richard W. Krusinski was chief of police. Defendant Thomas Caine was a detective at the Department, and Defendant Daniel R. Gilles was a sergeant at the Department.

Bakos and Turner have a history of conflict with Defendants. In 1995. Turner successfully ran for the position of Union Director, defeating Caine, who was the incumbent. Bakos supported Turner, and Krusinski allegedly disciplined both Plaintiffs unfairly after the election. Plaintiffs filed an unfair labor action charge against Krusinski, and that case

---

**1.** Defendants objected to those portions of the report that recommended denial of the motion for summary judgment. Plaintiffs failed to file objections, or for an extension of time, in a timely fashion. Therefore, the district court ruled that Plaintiffs effectively agreed with those portions of the magistrate judge's report that recommended granting summary judgment. The district court granted summary judgment, based on lack of objection, on the state law claims of false arrest and retalia-

tion against all Defendants, and on the state law claims of malicious prosecution and infliction of emotional distress against the City. Slip op. at 154.

**2.** With regard to the individual Defendants, the district court denied summary judgment on the § 1983 First and Fourth Amendment claims, the malicious prosecution claim, and the infliction of emotional distress claim; and granted summary judgment on the false arrest and Ohio "whistle blower" retaliation claim.

later settled. The following year, Bakos allegedly was placed on probation after complaining to Gilles that Caine was drunk on duty and committed theft. Later, Bakos and Defendants had disagreements concerning Bakos's entitlement to pay during his National Guard Service.

The events leading to the current conflict began in early 1998, when Bakos expressed concern that Mayor Jones, while acting as judge in the Olmsted Falls Mayor's Court, was treating first-time DUI offenders with excessive leniency in order to ensure that the Mayor's Court could keep the fines. Bakos brought these concerns to the prosecutor, who took no action. Bakos then contacted Mothers Against Drunk Driving, which contacted the press. The press contacted Bakos and Bakos and Turner spoke to the press about their concerns. Subsequently. Defendants forbade all police officers from speaking publicly about the matter. According to Plaintiffs. Defendants then began to search for reasons to terminate Plaintiffs.

In October 1998, Bakos was driving his patrol car through a cemetery when he struck a headstone that had been dragged into the road. Bakos promptly reported the accident. The Department dispatched Turner to investigate, and both he and Bakos filed reports. However, Krusinski suggested that Bakos and Turner had falsified their reports. As a result, Krusinski, Caine, and Gilles decided to conduct their own investigation. This investigation was seriously flawed. For example, no measurements were taken, marks on the headstone were ignored and later obliterated, and witnesses were not interviewed. In addition. Defendants hired an accident reconstructionist, for the first time ever, who also did not take any measurements. Defendants suggested to the reconstructionist how they believed the accident had occurred, which was at odds with Plaintiffs' version. The reconstructionist reported that the accident had occurred as Defendants suggested.

Mayor Jones then ordered that the case be presented to the prosecutor. Gilles testified before the grand jury. In addition to the flaws already mentioned. Gilles's presentation did not include known exculpatory evidence. Plaintiffs were indicted on charges of tampering with records and evidence, and falsification. They were arrested and imprisoned for several hours until they were able to obtain bail. Krusinski was later heard to declare that the City would "do whatever it takes to get rid of the plaintiffs, as 'pay back' for speaking with the press about the Mayor's Court."

On October 28, 1998, Bakos notified the City that his wife was scheduled to give birth on November 3, 1998. The next day, Mayor Jones notified Plaintiffs that the City would hold a predisciplinary hearing on November 3. Bakos requested a rescheduling, which the Mayor refused. Bakos did not attend the hearing. After the hearing. Mayor Jones terminated Plaintiffs for dishonesty.

Plaintiffs then took jobs as part-time security guards at an apartment complex. Chief Krusinski informed the apartment manager that the City would stop patrolling the area if Plaintiffs remained employees. Shortly thereafter, the apartment manager fired Plaintiffs and hired other City police officers instead.

Plaintiffs were tried and acquitted on their criminal charges in February 1999. Plaintiffs asked for their jobs back, but the Mayor refused. Plaintiffs sought arbitration and were awarded reinstatement to their old positions.

## II. ANALYSIS

### A. Jurisdiction over this interlocutory appeal

On November 29, 2002, Plaintiffs moved to dismiss this interlocutory appeal on the grounds that it does not present an immediately appealable issue of law.

"An appeal from the denial of qualified immunity may be reviewed on interlocutory appeal under *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), to the extent that it raises questions of law." *Vakilian v. Shaw,* 335 F.3d 509, 515 (6th Cir.2003) (citing *Dickerson v. McClellan,* 101 F.3d 1151, 1157 (6th Cir. 1996)). "[D]enials of qualified immunity may not be reviewed on interlocutory appeal insofar as 'a defendant simply wants to appeal a district court's determination that the evidence is sufficient to permit a particular finding of fact after trial.'" *Farm Labor Org. Comm. v. Ohio State Highway Patrol,* 308 F.3d 523, 531 (6th Cir.2002) (quoting *Johnson v. Jones,* 515 U.S. 304, 314, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)).

Plaintiffs argue that this Court lacks jurisdiction because the district court concluded there were issues of material fact as to whether there was probable cause to arrest Plaintiffs. They contend that Defendants have not accepted all of the alleged facts as true. Defendants respond that this appeal involves a question of law. They argue that the district court utilized an incorrect standard to determine the legal effect of an indictment on the probable cause determination. According to Defendants, the district court incorrectly used a state analysis regarding the presumptive weight of an indictment and misapplied that standard with respect to the evidence.

We agree with Defendants that this appeal involves a legal issue and we therefore deny the motion to dismiss for lack of jurisdiction. Although the district court concluded that the question of Defendants' qualified immunity turns on disputed questions of fact only. "[a] defendant's right to appeal the denial of qualified immunity does not turn on the phrasing of the district court's order...." *Christophel v. Kukulinsky,* 61 F.3d 479, 485 (6th Cir. 1995). Where the district court denies summary judgment based on the existence of questions of fact that do not affect a defendant's right to qualified immunity, we may address the legal question of whether the facts alleged demonstrate a constitutional violation. *See Christophel,* 61 F.3d at 485. Here, Defendants raise a question of law and if Defendants' legal argument is correct, the alleged facts do not demonstrate a Fourth Amendment violation.

### B. Qualified Immunity

#### 1. Fourth Amendment

We now turn to the central issue of whether the district court erred in denying Defendants' motion for summary judgment. Defendants argue that the district court applied an incorrect legal standard for purposes of the qualified immunity analysis with respect to the determination of whether there was probable cause to arrest Plaintiffs, and incorrectly concluded that there were genuine issues of fact as to whether Plaintiffs have shown a violation of their rights under the Fourth Amendment. We review the district court's denial of Defendants' claims that they are entitled to qualified immunity *de novo. See Spurlock v. Thompson,* 330 F.3d 791, 796 (6th Cir.2003).

"Qualified immunity grants government officials engaged in discretionary activities immunity from individual liability for civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person

would have known.' " *Higgason v. Stephens,* 288 F.3d 868, 876 (6th Cir.2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

> The Court applies a three-part test when determining whether a government official is entitled to the affirmative defense of qualified immunity. *See Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir.1999) (*en banc*). The first inquiry is whether the Plaintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated that right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established rights.' *Id.* 'In inquiring whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits.' *Walton v. City of Southfield,* 995 F.2d 1331, 1336 (6th Cir.1993) (citation and internal quotation marks omitted).

*Id.*

An arrest and prosecution made on probable cause does not violate the Fourth Amendment's prohibition against unreasonable search and seizure. *See Michigan v. DeFillippo,* 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *Crockett v. Cumberland College,* 316 F.3d 571, 580 (6th Cir.2003). "In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs,* 291 F.3d 867, 872 (6th Cir.2002) (citing *Painter*

*v. Robertson,* 185 F.3d 557, 569 (6th Cir. 1999)).

> A police officer has probable cause if there is a "fair probability" that the individual to be arrested has either committed or intends to commit a crime. *Northrop v. Trippett,* 265 F.3d 372, 379 (6th Cir.2001) (quoting *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)), *cert. denied,* 535 U.S. 955, 122 S.Ct. 1358, 152 L.Ed.2d 354 (2002). A police officer determines the existence of probable cause by examining the facts and circumstances within his knowledge that are sufficient to inform "a prudent person, or one of reasonable caution," that the suspect "has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).

*Fridley,* 291 F.3d at 872. We have held that, "[i]n general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Id.* (quoting *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir.1995)).

■ In this case, the magistrate judge found that there was a jury question as to whether probable cause existed to support the arrest of Plaintiffs. Rejecting Defendants' argument that probable cause necessarily existed because a grand jury had indicted Plaintiffs, the magistrate judge stated that the return of an indictment by a grand jury is only prima facie evidence of probable cause, which may be rebutted by a plaintiff's showing that probable cause did not exist by producing substantial evidence to establish a lack thereof. Slip. op. at 156 (citing *Friedman v. United States,* 927 F.2d 259, 261–62 (6th Cir.1991); *Ruff v. Runyon,* 60 F.Supp.2d 738, 748 (N.D.Ohio 1999)). The district court agreed with the magistrate judge's analy-

sis, and further cited *Adamson v. May Co.*, 8 Ohio App.3d 266, 269, 456 N.E.2d 1212 (Ohio Ct.App.1982), for the proposition that an indictment creates a rebuttable presumption of probable cause. Under that standard, the district court found that, in this case, there was ample evidence from which a jury could conclude that Defendants maliciously conspired to accuse Plaintiffs in front of the grand jury.

Defendants argue that the district court incorrectly relied on state law in determining that there was a jury issue as to the existence of probable cause. Under Ohio law, an indictment is prima facie evidence of probable cause, which may be rebutted. *See Friedman v. United States*, 927 F.2d at 262 (concerning whether there was probable cause to prosecute for purposes of a malicious prosecution claim). Defendants argue that the proper standard by which to evaluate the legal effect of an indictment upon a determination of probable cause is found in *Higgason v. Stephens*, 288 F.3d 868 (6th Cir.2002). There, the plaintiff brought a § 1983 claim against officers in which he alleged that he was indicted without probable cause in violation of due process. *Id.* at 876–77. This Court held that the plaintiff failed to show a violation of a constitutionally protected right because the plaintiff was indicted pursuant to a determination made by a grand jury:

> Plaintiff's due process allegation comes down to a claim he was indicted without probable cause. However, it has long been settled that 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer.' *See Ex parte United States*, 287 U.S. 241, 250, 53 S.Ct. 129, 77 L.Ed. 283 (1932). Therefore, because Plaintiff was indicted pursuant to a determination made by the grand

jury, he has no basis for his constitutional claim. *See id.*

*Id.*

We agree with Defendants that the district court incorrectly relied on Ohio law in evaluating the effect of an indictment in determining whether there was probable cause to arrest Plaintiffs. *Higgason* states the controlling federal standard in this Circuit. Under *Higgason*, an indictment "fair upon its face, by a properly constituted grand jury" conclusively determines that there was probable cause. *Id.* at 877.

Here, we cannot say that the indictment at issue was not fair on its face or issued by an improperly constituted grand jury. There is no evidence of perjured testimony or irregularity in the grand jury proceeding so as to indicate that the indictment was somehow tainted and therefore not entitled to a conclusive presumption that there was probable cause to support the arrest of Plaintiffs. The magistrate judge cited the following evidence to support the conclusion that, despite the indictment, there was a jury question as to the existence of probable cause: (1) Krusinski and Caine, who conducted the investigation of Plaintiffs, had an animus against them: (2) the investigation relied on a brief accident reconstruction, which used no measurements; (3) the investigation ignored relevant factors; (4) the investigators grossly mishandled physical evidence; (5) the Mayor intervened to ensure that the case went to the prosecutor; and (6) Gilles, the officer who testified to the grand jury, withheld exculpatory evidence to ensure an indictment. In addition, Plaintiffs offered testimony regarding statements by Defendants that Plaintiffs would be punished for their protected speech. The magistrate judge concluded, "[i]f plaintiffs' case is believed, it is more than sufficient to allow a reasonable jury to believe that the indict-

ment of Bakos and Turner was without probable cause, despite the presumption [created by the indictment]."

There is no evidence of irregularity in the actual grand jury proceedings. The evidence cited by the magistrate judge, and Plaintiffs' allegations, concern deficiencies in the investigation. Under *Higgason*, the indictment provided probable cause to support the arrest of Plaintiffs. Because the facts show that probable cause did exist based on the indictment, Plaintiffs cannot demonstrate a violation of their Fourth Amendment rights and we may end our qualified immunity analysis here. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). Therefore, Defendants are entitled to qualified immunity on this claim.

### 2. First Amendment Retaliation Claim

■ Plaintiffs' complaint also alleges that Defendants' violated § 1983 by illegally retaliating against Plaintiffs for exercising their First Amendment right to speak about a matter of public concern.

Even if the indictment serves as conclusive evidence of probable cause and, therefore, the arrest of Plaintiffs did not constitute a Fourth Amendment violation, summary judgment is not appropriate with respect to the First Amendment claim. Unlike the Fourth Amendment claim, the issue of probable cause to arrest is not determinative of the First Amendment claim. Furthermore, Plaintiffs allege other acts of "clearly illegal, retaliatory behavior" in violation of Plaintiffs' First Amendment rights in addition to the arrest and prosecution. Most notably, Defendants allegedly ensured that Plaintiffs lost their new jobs as security guards. We therefore affirm the denial of Defendants' motion for summary judgment on this claim.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's denial of qualified immunity on the Fourth Amendment claim; and **AFFIRM** the denial of summary judgment on the First Amendment claim.