NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0020n.06
Filed: January 6, 2005

No. 03-3724

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KAREN STANLEY, and )
PAUL STANLEY, )
)
Plaintiffs-Appellants, )
)
v. )           ON APPEAL FROM THE UNITED
)           STATES DISTRICT COURT FOR THE
CITY OF NORTON, LANCE KIMMELL, )   NORTHERN DISTRICT OF OHIO
BRIAN PETERMAN, MATTHEW )
HARTNETT, DENNIS CUMMINGS, )
RALPH DOLENCE, DOLENCE )
ELECTRIC TECHNICAL )
CONSULTANTS, INC., AUTO OWNER'S )
INSURANCE COMPANY, EFI )
ENGINEERING AND FIRE )
INVESTIGATIONS, and KERRY W. )
AUTIO. )
)
Defendants-Appellees )_____

BEFORE: BOGGS and DAUGHTREY, Circuit Judges, and Wiseman[1], District Judge.

**PER CURIAM**. Plaintiffs-Appellants bring this appeal from an order of the District Court

granting a Motion to Dismiss, Rule 12(b)(6), as to some Defendants, and the grant of a Motion for

Judgment on the Pleadings, Rule 12(c), as to other Defendants. For the reasons that follow, we

AFFIRM.

**THE PARTIES AND THE CLAIMS**

On August 14, 2002, Karen and Paul Stanley, ("Appellants"), filed a Complaint in the

United States District Court for the Northern District of Ohio against the City of Norton; Lance

_____

[1]The Hon. Thomas A. Wiseman, Jr., Senior United States District Judge for the Middle
District of Tennessee, sitting by designation.

1

Kimmell, Special Agent with the ATF; Brian Peterman, Investigator with the State Fire Marshal's Arson Bureau; Matthew Harnett, Investigator with the State Fire Marshal's Arson Bureau; Dennis Cummings, Investigator with the State Fire Marshal's Arson Bureau; Ralph Dolence, employee of Dolence Electric Technical Consultants, Inc.; Dolence Electric Technical Consultants, Inc., ("Dolence Electric"); Auto Owner's Insurance Company, ("AOI"); EFI Engineering and Fire Investigations, ("EFI"); and Kerry Autio, fire investigator for EFI.

Appellants' Second Amended Complaint alleged nine claims for relief, of which four were federal claims: 1) violation of their Fourth Amendment right to be free from illegal search and seizure; 2) civil rights conspiracy; 3) malicious prosecution (derived from the Fourth Amendment's guarantee against illegal search and seizure); and 4) a *Bivens* claim[2]. The District Court exercised jurisdiction over the remaining five claims of relief through supplemental jurisdiction.

AOI, Peterman, Harnett, Cummings, EFI, and Autio filed Rule 12(c) Motions for Judgment on the Pleadings. Kimmell, Dolence, Dolence Electric, and City of Norton filed Rule 12(b)(6) Motions to Dismiss.

## RELEVANT FACTS

On September 29, 2000, at 2:57 a.m., Appellants' neighbor telephoned the City of Norton Fire Department to report that Appellants' residence at 5231 Hametown Road, Norton, Ohio was on fire. At approximately 4:00 a.m., Investigator Brian Peterman of the Ohio State Fire Marshal's Arson Bureau received a phone call alerting him of the fire at Appellants' residence and requesting his office's assistance in determining the origin of the fire. Upon arrival at the residence and containment of the fire, Peterman entered the home and located the dead body of 13-month-old Bo Stanley, the infant son of Appellants. Peterman, anticipating the need for more help and expertise, notified ATF Special Agent Lance Kimmell and Dennis Cummings (who was asked to bring K-9 units with him) and Matthew Hartnett of the Ohio State Fire Marshal's Arson Bureau. At a later date,

---

[2]*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Special Agent Kimmell called Ralph Dolence of Dolence Electric to aid in the investigation. Kerry Autio also investigated the fire for his employer, EFI, an agent of Appellants' insurer, AOI.

Appellants voluntarily submitted to interviews with City of Norton police officers at the scene where they relayed similar stories recounting the following events: 1) Appellants awoke to the sound of crackling over the baby monitor; 2) Paul Stanley rushed to the infant's room and attempted at least four rescues but was unable to complete any such attempt due to flames and smoke; 3) while Paul Stanley was attempting rescue, Karen Stanley attempted to call 911 from their bedroom, but was unable to see the buttons on the phone due to smoke in the house, eventually causing her to drop the phone and exit the house; 4) at some point during his rescue attempts, Paul Stanley threw a propane tank, in the open position, through the window of his son's bedroom; 5) Paul Stanley moved his two trucks away from the home and went to the neighbors to call 911 (first Mr. Stanley claimed he moved the trucks prior to telling his neighbors to call 911, then he changed his story to say that he moved the trucks after the call but before the arrival of the Norton City Fire Department). After these voluntary interviews, Appellants consented to a search of the house pursuant to a signed consent form and also signed written statements confirming what they stated in the interview.

In addition to the information Appellants provided, the following facts are also undisputed. The neighbors claim they rushed to the Appellants' home after calling 911 and offered to go inside the house to look for the infant son, but Appellants told them not to go in. When the Norton City Fire Department arrived and asked where the infant son was located, the only answer Appellants gave was "in the house," only later telling them where in the house. The fire originated in three places, and displayed burn patterns consistent with the use of a flammable liquid (which was contrary to Appellants' claim that the fire originated below Bo's room and spread to the rest of the home). The K-9 units on the scene detected the presence of a flammable liquid on some sections of the home (upon taking samples, the investigators discovered that turpentine was present). Paul Stanley was wearing white pants that had no signs of soot or burn marks, nor did Karen Stanley's

3

clothes (which seems strange in light of the Appellant's claims that they attempted to rescue their son). City of Norton Fire Department and Police Department officers took note that Paul Stanley was calm and Karen Stanley was crying a bit when they arrived on the scene. Appellants did express some concern for their pets inside the home. During their investigation of the residence, investigators noticed that the bedroom phone was in its cradle, not on the floor as Karen Stanley had claimed.

Appellants allege that all investigative defendants issued reports that were completed wantonly, recklessly, and negligently. Each report concluded that the fire was the result of arson, thus making the death of the infant a homicide. Appellants allege that Mr. Dolence provided the prosecutor's office with information indicating that the fire was incendiary in nature. Appellants further allege that on February 2, 2001, Detective Fields of the City of Norton Police Department and unknown investigators met with Summit County Prosecutors, following which Appellants were each charged with aggravated arson and aggravated murder.

On February 5, 2001, Appellants were taken into custody and confined for a period of 78 days, at which point they were released on bail. On February 14, 2001, an indictment was returned by the grand jury charging Appellants with aggravated murder with aggravated arson. On December 24, 2001, Mr. Peterman received a report explaining that naturally occurring turpentine would be found in wood that is the same chemically as man-made turpentine, and that this was a widely known fact. In January 2002, Appellants' expert concluded that the fire was caused by an electrical malfunction, as evidenced by faulty wiring and oversized fuses. On February 4, 2002, the prosecution dismissed the indictments against Appellants.

**STANDARD OF REVIEW**

This court reviews a district court's grant of Dismissal for Failure to State a Claim under Rule 12(b)(6) and grant of Judgment on the Pleadings under Rule 12(c) *de novo*. *Zigler v. IBP Hog Market*, 249 F.3d 509, 511-12 (6th Cir. 2001).

A motion for judgment on the pleadings requires the court to "construe the complaint in the

light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, then determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *id*. "The court's inquiry is limited to whether the challenged pleadings set forth allegations sufficient to make out the elements of a right to relief." *Branch Int'l Servs., Inc. v. Budde*, 890 F.Supp. 659, 661-62, aff'd, 89 F.3d 832 (6th Cir. 1996).

A motion to dismiss for failure to state a claim requires the court to evaluate whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983). The complaint must be construed in their light most favorable to the nonmoving party and its allegations taken as true. *See Scheuer v. Rhodes*, 416 U.S. 232 (1974). As a general rule, matters outside the pleadings cannot be considered in determining a motion to dismiss unless the motion is converted to one for summary judgment. *Weiner, D.M.P. v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). However, the Sixth Circuit considers documents attached to a motion to dismiss as part of the pleadings, if they are referred to in the complaint and are central to the claim. *id*. at 89.

## ANALYSIS

All § 1983 violations depend on the plaintiff's ability to plead and prove that a defendant: 1) acting under the color of state law 2) deprived a plaintiff of a right secured by the Constitution or law of the United States. *Paul v. Davis*, 424 U.S. 693, 696-97 (1976).

Qualified immunity, however, protects government officials, sued in their personal capacities for performing discretionary functions, from litigation and liability. To defeat qualified immunity, the plaintiff must show: 1) that a constitutional right was violated; and 2) that the right was clearly established (whether a reasonable officer would have had fair warning that the acts the defendant performed were unlawful). *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999). While qualified immunity is an affirmative defense to be asserted by the defendant, the ultimate burden of proof is on the plaintiff to demonstrate that the defendant is not entitled to qualified immunity. *Gardenhire v. Schubert*, 205 F.3d 303, 310-11 (6th Cir. 2000).

5

The court applies a three-part test in determining whether an official is entitled to qualified immunity. First, plaintiff must plead a violation of a constitutionally protected right; second, plaintiff must plead that the right was so clearly established that a reasonable official would have known that his behavior violated a right; and third, plaintiff must allege sufficient facts and support such allegations by sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of clearly established rights. *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002)

### All Governmental Appellees

Here, the Appellants have not specifically alleged a violation of the constitutionally protected right by any of the Appellees. While Appellants claim that each of the Governmental Appellees violated Appellants' Fourth Amendment right to be free from illegal seizure, they do not describe any proof of this.[3] In addition, this Court has clearly stated that no claim of malicious prosecution can survive in the presence of probable cause. This is true regardless of false statements of governmental officers. *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001).[4] In this case, probable cause has *per se* been established by grand jury indictment of

---

[3]None of the Governmental Appellees seized (arrested and confined) the Appellants. Appellants' claim here rests upon the notion that Appellees violated Appellants' Fourth Amendment rights by wantonly, recklessly, and negligently concluding that the fire was the result of arson (the only factual allegations used to support this claim are that Appellees failed to tell the prosecution that turpentine can be naturally occurring in wood and that Appellees failed to convey exculpatory evidence about the electrical system in the house). Appellants do not allege that any of the Governmental Appellees made or influenced the prosecution's decision to file charges. The absence of any allegations that Appellees caused the illegal seizure is fatal to Appellants' claim.

[4]There is some Sixth Circuit precedent holding that withholding exculpatory evidence can be grounds for a new trial. *See Sutkiewicz v. Monroe Cty. Sheriff*, 110 F.3d 352 (6th Cir. 1997). There is also precedent that, "an officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for the falsities the judge would not have issued the warrant." *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1996). But those are very different situations than the court faces here. Here, Appellants do not seek to suppress evidence; rather Appellants seek to overturn a grand jury finding of probable cause based on an admittedly legal search because the grand jury was not given evidence that may or may not have been exculpatory. In addition, *Ahlers* includes a "but for" element in its examination; "but for" the falsity or omission, probable cause would not be found. Appellants do not allege this "but for" requirement here, nor does this court think it is a supportable allegation.

Appellants. In *Higgason*, this court stated that it is long settled that the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause. 288 F.3d at 877 (citations omitted). Thus, there was probable cause for arrest and no action for false arrest or malicious prosecution will lie here.

### The Governmental Defendants, Individually

State Fire Marshals Peterman, Hartnett, and Cummings, and Special Agent Kimmell are sued in their individual capacities. Having determined that they are entitled to qualified immunity, the claims of unlawful search, unlawful seizure, and malicious prosecution, as well as the *Bivens* claim against Special Agent Kimmell, must fail.

### Civil Rights Conspiracy

Appellants allege that all Appellees conspired in violation of § 1983 to abridge Appellants' Fourth Amendment Rights. Again, this claim fails as none of the Governmental Defendants violated Appellants' Fourth Amendment rights. In addition, even had a Fourth Amendment violation been properly pled and could possibly be found, Appellants did not plead with the conspiracy with the degree of specificity as required in this Circuit. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Appellants' conclusory claims in the complaint are not enough to withstand a judgment on the pleadings. See *id.*

### The City of Norton

Appellants attempt to hold liable the City of Norton under the theory of *respondeat superior* for the actions of the State Fire Marshals Office employees. However, a municipality cannot be held liable under *respondeat superior*. *See Board of County Comm'rs of Bryan County, Okla. v.*

---

In the unpublished opinion of *Bakos v. City of Olmsted Falls*, this Court held that regardless of: 1) animus of the investigators toward plaintiffs; 2) bad investigative techniques; 3) investigators ignoring relevant facts; 4) investigators grossly mishandling physical evidence; 5) intervention by the Mayor to ensure prosecution; and 6) withholding exculpatory evidence, the grand jury finding of probable cause was conclusive and granted qualified immunity to the defendants. 73 Fed. Appx. 152, 157 (6th Cir. 2003). All of the above cited factors were merely deficiencies in the investigation and not evidence of irregularities in the grand jury proceedings. *id.*

7

*Brown*, 520 U.S. 397, 403 (1997). To prevail on a claim of city liability under § 1983, Appellants must establish: 1) deprivation of a Constitutional right; 2) that the city had a policy or custom; and 3) that the city was the moving force behind the constitutional violation. *Monell v. Dep't of Social Svcs.*, 436 U.S. 658, 690 n.55 (1978). None of these are pled here.

The only municipal policy or custom referred to is the City of Norton's alleged failure to train and supervise its agents. A failure to train may be a § 1983 violation only if it amounts to deliberate indifference to risk of constitutional injury. *See Canton v. City of Harris*, 489 U.S. 378, 388-89 (1989). Appellants do not plead any of this. In addition, none of the Appellees are employees of the City of Norton, which is also fatal to the claim.

## Conclusion

The District Court's Judgment is AFFIRMED as to all claims and all Defendants.