NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0079n.06

Case No. 25-5690

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Feb 10, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| JASON GREEN, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| KENNY PERKINS and JOEY KEITH, individually | ) | |
| as Deputy Sheriffs for the Adair County Sheriff's | ) | |
| Department, | ) | |
| | ) | |
| Defendants-Appellants. | ) | O P I N I O N |
| | ) | |

BEFORE: McKEAGUE, GRIFFIN, and THAPAR, Circuit Judges.

McKEAGUE, Circuit Judge. Following a dispute with his mother, Jason Green splashed gasoline on himself, and his mother called 911. She reported that Green was high on drugs, carrying a gasoline container, and spreading gasoline everywhere. But that was not all—she also reported that Green had a lighter. Supplied only with that information, Deputies Joey Keith and Kenny Perkins were dispatched to the scene. And when they arrived, they encountered Green in a dark backyard, where he doused himself with gasoline. Keith and Perkins deployed their tasers in an effort to subdue Green, causing the gasoline to ignite and leaving Green with severe burns. He brought federal and state law claims against Keith and Perkins. But Green's right to be free from excessive force in this context was not clearly established. And Keith and Perkins reasonably concluded that they had probable cause to arrest and prosecute Green. So, we **REVERSE** the

denial of qualified immunity as to Green's federal claims, and **REMAND** the state law claims for further proceedings.

## I.

Jason Green lived with his mother, Vickie Smith, and stepfather, Charles Smith. One afternoon, after using methamphetamine and marijuana, Green became upset with his parents. The reason for his anger is unclear: Green says it stemmed from his parents' refusal to let him drive while under the influence of drugs, while Vickie Smith claims Green was upset because she refused to give money to a woman who had driven Green home. In either case, Green responded by picking up a container of gasoline, which he then poured on himself and splashed sporadically.

Green's behavior prompted Vickie Smith to call 911. She told the police dispatcher that Green was high on drugs, but that he did not have any weapons. When asked what Green would "harm himself with," Vickie Smith told the dispatcher that Green was "packing gas" and "a lighter." R. 34-4, 1:45-1:55.[1] She later reiterated that "he's just spreading gas" and had "a lighter in his hands." *Id.*, 2:38-2:44. She explained that she wanted Green to go to rehab. *Id.*, 3:41-3:48.

Deputies Kenny Perkins and Joey Keith were dispatched to the scene. Initially, dispatchers told Perkins and Keith that Green was "wild" and had "no known weapons." *Id.*, 4:30-4:41. But, before they arrived, dispatchers twice informed Perkins and Keith that Green was "packing a gas can and a lighter," and explained he was "spreading gas everywhere." *Id.*, 5:25-5:34, 6:51-6:54. They also explained that Charles Smith was trying to "talk [Green] down from doing anything" but "it wasn't working." *Id.*, 6:54-7:01.

---

[1] Green claims that Vickie Smith told the dispatcher she *presumed* he had a lighter. But the 911 recording blatantly contradicts that assertion. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). And even if it did not, the information relayed to Perkins and Keith certainly was not qualified.

Hearing police cars in the distance, Green grabbed a Bible and made the decision to run—all the while still holding the gas container. When Perkins and Keith arrived, they found Green attempting to flee over a fence at the edge of the yard. But his attempt was thwarted by Vickie Smith, who prevented his escape by grabbing his shirt.

At that point, Green jumped down from the fence and doused himself in gasoline. Perkins and Keith ordered Green to drop the gasoline container. According to Green, he complied and showed Perkins and Keith his hands. Concerned for her son's safety, Vickie Smith stepped between Green and the deputies, who had their tasers trained on Green. She pleaded with the deputies not to shoot, but to handcuff Green instead. Perkins and Keith directed Vickie Smith to "move." R. 37-1, PageID 454. Heeding those orders, she stepped "maybe" "a couple of feet away." *Id.*, PageID 457.

Immediately, Perkins and Keith deployed their tasers, which caused the gasoline on Green to ignite. Based on surveillance footage (which captured the events from quite a distance), the deputies' interactions with Green occurred under cover of darkness, and only about thirty seconds passed from their arrival on scene to the deployment of their tasers.

Perkins and Keith claim they fired because Green was either "flicking" or "sparking" a lighter. R. 34-5, PageID 238; R. 34-6, PageID 268. Indeed, Perkins testified that Green ignited himself prior to being tased. As they saw it, tasing Green was necessary to get "him on the ground to prevent him from dying" and to protect Green from harming his mother, who they believed was also covered in gasoline. R. 34-5, PageID 247; R. 34-6, PageID 276. But Green and his parents later claimed he never had a lighter. In fact, no lighter was found at the scene. Green suffered severe burns and was transported to the hospital.

Green also faced legal repercussions. Among other offenses, he was indicted for wanton endangerment, a class D felony in Kentucky. Green claims that Perkins made several false statements before the grand jury to secure that charge. First, Perkins testified that Green was threatening to burn vehicles. R. 43-13, 1:42-1:46. Green points out that such a fact was never communicated by dispatch to Perkins or Keith. Second, Perkins testified that Green poured gasoline "all over his head and all over his mom" and that he was holding her when he struck the lighter. *Id.*, 2:32-2:37, 9:55-10:05. Green cites contradictory testimony, as well as a subsequent forensic report to undercut those assertions. Finally, Perkins relied on Green's statement that he intended to harm Vickie Smith, as documented in a paramedic's contemporaneous incident report. *Id.*, 5:35-5:44; R. 43-17. Green denies that he made that statement.

Eventually, after he was acquitted, Green filed this lawsuit. As he sees it, Perkins and Keith violated the Fourth Amendment and state law by using excessive force when they tased him, and by arresting and prosecuting him without probable cause. Keith and Perkins moved for summary judgment, asserting qualified immunity. Relevant here, the district court denied the motion as to Green's Fourth Amendment claims for excessive force, false arrest, and malicious prosecution. And it refused to dismiss his state law claims for assault, battery, false imprisonment, and malicious prosecution. The district court's analysis turned primarily on the parties' dispute over whether Green possessed a lighter, which it found dispositive as to the reasonableness of the use of force and the existence of probable cause. Perkins and Keith filed this interlocutory appeal.

**II.**

Starting with Green's federal claims, he contends that Perkins and Keith violated the Fourth Amendment, asserting claims for excessive force, false arrest, and malicious prosecution. The deputies argue they are entitled to qualified immunity as to each. We agree.

-4-

**A.**

At the outset, Green disputes our jurisdiction to review the denial of qualified immunity. Generally, we have appellate jurisdiction to review only final decisions of district courts. 28 U.S.C. § 1291. And it is true that an order denying summary judgment does not ordinarily fit that bill. *Gillman v. City of Troy*, 126 F.4th 1152, 1158 (6th Cir. 2025). That said, an order denying "a qualified immunity defense can—in some circumstances—be reviewed on an interlocutory basis under the collateral order doctrine." *Id.* In that posture, we can review a district court's decision denying qualified immunity "only to the extent that the appeal turns on an issue of law." *Id.* (citation modified). But we cannot resolve a "defendant's quarrel with the plaintiff's record-supported facts, which the district court must adopt at summary judgment." *Id.* (citation modified).

Here, Perkins and Keith's arguments fall on the permissible side of the line. To be sure, the parties vigorously dispute whether Green was holding a lighter when he was tased. That said, even if "the record contains genuine factual disputes, a defendant may nonetheless invoke our jurisdiction by conceding the plaintiff's version of the facts for the purposes of appeal." *Id.* at 1159 (citation modified). The deputies do just that—they "concede that Green did not have a lighter for purposes of this appeal." Appellants' Reply Br. at 5; Oral Arg. at 3:20-3:24. As a result, accepting Green's version of events, we can review the purely legal question of whether Keith and Perkins are entitled to qualified immunity under federal law.

**B.**

Turing to the merits, Keith and Perkins argue they are entitled to immunity as to each of Green's Fourth Amendment claims. Qualified immunity protects public officials from liability unless their actions violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). So, to

determine if an officer is shielded by immunity, the court asks two questions: "(1) whether the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Wright v. City of Euclid*, 962 F.3d 852, 864 (6th Cir. 2020). We can address those questions in either order. *Pearson*, 555 U.S. at 236. And if the plaintiff fails to make the required showing as to either prong, qualified immunity is appropriate. *See id.* Because the application of qualified immunity presents a legal question, the court reviews the district court's denial of immunity de novo. *Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 466 (6th Cir. 2023).

## 1.

Start with Green's claim that Perkins and Keith's use of a taser while he was covered in gasoline amounted to excessive force. On that score, we start and end with the second qualified immunity inquiry: no clearly established law provided a fair warning that Keith and Perkins's use of a taser ran afoul of the Fourth Amendment. *See, e.g.*, *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 508 (6th Cir. 2012). To prove otherwise, Green "must point to a case showing that reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered." *Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022). In doing so, specificity is important because "excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104-05 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)); *Bell*, 37 F.4th at 367. This novel factual context exemplifies the need for precision.

Nonetheless, Green asserts that "[n]o reasonable officer could believe it was lawful to tase a stationary, non-threatening individual doused in gasoline when that individual possessed no

-6-

means of ignition." Appellee's Br. at 27-28. But he improperly frames the inquiry with the benefit of hindsight by failing to account for the deputies' reasonable belief that he had a lighter. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (recognizing that the use of force must be analyzed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"). And, more importantly, no case would have made it clear to Perkins or Keith that—in these circumstances—it was unreasonable to judge Green as an immediate threat. In other words, Green has not carried his burden of identifying a case with "facts like the ones at issue here" that would have given Keith and Perkins fair notice that their actions were unlawful in light of the information they possessed. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021).

Green's arguments to the contrary are unconvincing. He first attempts to distinguish Perkins and Keith's key case—*Ramirez v. Guadarrama*, 3 F.4th 129 (5th Cir. 2021). That case has some similar facts: officers tased Ramirez after he covered himself in gasoline because he was "holding some object that appeared as though it might be a lighter." *Id.* at 132. Given the potential risk posed by Ramirez, the Fifth Circuit deemed the officers' use of force reasonable. *Id.* at 137. But Green is right, *Ramirez* is not on all fours. Here, unlike in *Ramirez*, there was no explicit indication that Green was suicidal. *Id.* at 134. And the tasing occurred outside, not in an occupied structure. *Id.* Moreover, there was no dispute that Ramirez was holding a lighter, and in this posture, we must assume that Green was not. *Id.* Even so, distinguishing *Ramirez* does not move the needle. Although the use of a taser in that case did not violate the Fourth Amendment, it does not follow that the use of a taser against an individual doused in gasoline in any case not involving those aggravating facts clearly sinks to the level of unreasonable. In any event, Green, not the deputies, bears the burden of coming forward with a case that shows the deputies acted unlawfully.

Green next attempts to define the relevant right broadly: the right to be free from excessive force. But "[i]n deciding whether a right has been clearly established, the Supreme Court has repeatedly warned lower courts not to define the right at a high level of generality." *Hagans*, 695 F.3d at 508 (citation modified). So, the "general proposition that the Fourth Amendment prohibits police officers from using excessive force is of little help in determining whether the violative nature of [an officer's] particular conduct was clearly established." *Id.* (citation modified).

Stepping down a level, Green argues that tasering a compliant or non-threatening suspect constitutes excessive force. Yet his cited cases look nothing like the situation Keith and Perkins faced here. Certainly, none involve an individual doused in a combustible material and reportedly in possession of an ignition source (or any remotely similar situation). And even more generally, they involve suspects that were not reasonably viewed as a threat—an assumption that does not fit these facts. *See, e.g.*, *Landis v. Baker*, 297 F. App'x 453, 461 (6th Cir. 2008) ("[T]here was no longer a threat to any of the officers."); *Kijowski v. City of Niles*, 372 F. App'x 595, 600 (6th Cir. 2010) ("Under these circumstances, a reasonable officer on the scene would not have perceived Kijowski as presenting a risk of harm."); *Browning v. Edmonson Cnty.*, 18 F.4th 516, 526 (6th Cir. 2021) ("[A] reasonable jury could find that under the totality of the circumstances, a reasonable officer would not believe that [the suspect] posed a threat of immediate danger."); *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 496 (6th Cir. 2012) ("At no point did Cockrell use violence [or] make threats."). We must judge the deputies' on-the-ground assessment without the benefit of hindsight, recognizing that they were "forced to make split-second judgments—in circumstances that [were] tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 397. Green points to no contemporaneous facts that would have reasonably dispelled Keith and Perkins's belief that Green was a threat to the deputies, bystanders, and himself.

That makes all the difference here. Green's cited cases are "materially distinguishable" because they "address . . . circumstances in which officers may use a taser to arrest a person who poses *no* risk of harm to the officer." *Browning*, 18 F.4th at 541 (citation modified) (Murphy, J., concurring in part and dissenting in part). While the qualified immunity inquiry does not require a case directly on point, Green's cited cases do not "come close to resembling the facts that the [o]fficers confronted when they arrived on the scene." *Gambrel v. Knox Cnty.*, 25 F.4th 391, 401 (6th Cir. 2022).

If anything, our cases favor Perkins and Keith. In *Browning*, for example, we recognized that a taser could not be deployed if a suspect was not actively resisting arrest. 18 F.4th at 525. In doing so, we characterized active resistance as, among other things, "erratic or irrational behavior." *Id.* at 527. Here, Green's conduct—spreading and dousing himself in gasoline while high on drugs—certainly seems to fit that bill. At argument, Green's counsel was not able to explain why that label does not cover Green's actions, particularly in light of Keith and Perkins's reasonable belief that Green had a lighter. *See* Oral Arg. at 14:58-17:38.

But if there were any lingering doubt, the deputies did not violate clearly established law because Green's behavior "does not fit cleanly within our existing excessive force case law." *King v. City of Rockford*, 97 F.4th 379, 397 (6th Cir. 2024) (citation modified). In that "zone of twilight, when the evidence—viewed in a light most favorable to the plaintiff, but through the lens of a reasonable officer at the scene—presents a complex situation, leaving the exact nature of the threat or degree of resistance unclear, we give officers the benefit of the doubt and excuse any reasonable mistake of judgment in deploying a taser." *Feagin v. Mansfield Police Dep't*, 155 F.4th 595, 604 (6th Cir. 2025) (citation modified). Indeed, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Rudlaff v. Gillispie*, 791 F.3d 638, 644 (6th Cir.

2015) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). And there were no bright lines here. Because Perkins and Keith did not violate clearly established law in tasing Green, they should have been afforded qualified immunity from Green's excessive force claim.

**2.**

Next, Green argues that Keith and Perkins lacked probable cause to arrest him and pursue charges for wanton endangerment. The Fourth Amendment guards against arrests and prosecutions in the absence of probable cause. *Sykes v. Anderson*, 625 F.3d 294, 305, 308 (6th Cir. 2010).[2] But here Keith and Perkins had probable cause on both fronts.

Start with the claim for false arrest. "To determine whether an officer had probable cause for an arrest, [the court] examine[s] the events leading up to the arrest, and then decide[s] whether [those] historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018) (citation modified). Judged from that perspective, the "facts and circumstances within the officer's knowledge" must be "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). That is not a high hurdle: it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Wesby*, 583 U.S. at 57 (citing *Illinois v. Gates*, 462 U.S. 213, 243-44, n.13 (1983)).

Perkins and Keith reasonably concluded that they had probable cause to arrest Green. Under Kentucky law, "[a] person is guilty of wanton endangerment . . . when, under circumstances

---

[2] Both parties focus on how the indictment in this case impacts Green's false arrest claim. In some cases, a grand jury indictment might logically bear on the analysis of a false arrest claim when the indictment occurs prior to the arrest. *See, e.g.*, *Bakos v. City of Olmstead Falls*, 73 F. App'x 152, 154 (6th Cir. 2003). But that is not the case here. Green was arrested and later indicted. Accordingly, we analyze his false arrest allegations without the benefit afforded by the indictment.

manifesting extreme indifference to the value of human life, he or she wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." Ky. Rev. Stat. § 508.060(1). As far as Perkins and Keith knew, while high on drugs, Green was spreading gas everywhere while in possession of a lighter. When they arrived on the scene, Perkins and Keith observed Green jump quickly from a fence, before dousing himself in gasoline and throwing the container to the ground. All the while, the record shows that Green was in somewhat close proximity to Vickie Smith and the deputies, even if the parties dispute exactly how far. To be sure, a later search did not turn up a lighter and a subsequent forensic test indicated that Vickie Smith had no gasoline on her clothing. But neither of those post-hoc discoveries could have altered Keith or Perkins's on-scene perceptions prior to the arrest. In light of the information available to Perkins and Keith, and keeping in mind that probable cause is "not a high bar," a reasonable officer in Perkins or Keith's shoes could have reasonably concluded that Green created a substantial risk of death or serious injury to another person. *Wesby*, 583 U.S. at 57 (citation modified).

More to the point, even assuming Keith and Perkins did lack probable cause, Green has again failed to point to any case that would have made that conclusion clear. *Barrera v. City of Mount Pleasant*, 12 F.4th 617, 624-25 (6th Cir. 2021). Like in the excessive force setting, "specificity" is "especially important," because "officers will often find it difficult to know how the general standard of probable cause applies in the precise situation encountered." *Wesby*, 583 U.S. at 64 (citation modified). Because Perkins and Keith had probable cause, or at the very least reasonably believed that they did, they should have been afforded immunity from Green's false arrest claim.

And the same is true for Green's malicious prosecution claim. Like a claim for false arrest, malicious prosecution requires a plaintiff to show that there was a lack of probable cause for the

criminal prosecution. *Sykes*, 625 F.3d at 308. And that is a steep hill to climb, because, as Green concedes, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015) (citation modified). Here, a grand jury indicted Green for wanton endangerment, among other offenses.

Nonetheless, Green argues that the grand jury's assessment was tainted by Perkins's testimony. As we laid out in *King v. Harwood*, the presumption of probable cause afforded by an indictment can be overcome if an officer (1) knowingly or recklessly made false statements, (2) that were material to the ultimate prosecution of the plaintiff, and (3) were not "solely" grand-jury testimony. 852 F.3d 568, 587-88 (6th Cir. 2017); *see Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) (recognizing that "pre-indictment nontestimonial acts that were material to the prosecution of a plaintiff could rebut the presumption of probable cause established by a grand-jury indictment").

Green's argument—which seeks to rebut probable cause based on statements made before the grand jury—fails at step three of *King*. Green points to no evidence of specific actions "prior to and independent of . . . grand-jury testimony" in which Perkins or Keith falsified evidence or made false statements. *King*, 852 F.3d at 590. *See also Mills*, 869 F.3d at 480; *Lester v. Roberts*, 986 F.3d 599, 609 (6th Cir. 2021). So, no matter the veracity of Perkins's statements before the grand jury, Green cannot rely on that testimony to overcome the presumption of probable cause created by the indictment. As a result, he has not shown a Fourth Amendment violation for malicious prosecution, and Keith and Perkins are entitled to qualified immunity.

**III.**

That leaves Green's state law claims for assault, battery, false imprisonment, and malicious prosecution. At the outset, we lack jurisdiction to review the malicious prosecution claim. When a case in federal court "involve[s] pendent state claims, we must look to state immunity law to determine whether a denial of immunity based on state law is appealable." *Browning*, 18 F.4th at 529 (citation modified). Like federal courts, "Kentucky permits interlocutory appeal[s] to review a denial of qualified immunity." *Id.* (citation modified); *see Baker v. Fields*, 543 S.W.3d 575, 577-78 (Ky. 2018) (explaining the scope of permissible review). Even so, there is a wrinkle: qualified official immunity is "unavailable" as a defense to a Kentucky malicious prosecution claim. *See Martin v. O'Daniel*, 507 S.W.3d 1, 5 (Ky. 2016). So, we cannot reach that claim absent a final order. Indeed, at argument, counsel recognized as much. *See* Oral Arg. at 8:37-8:45.

Beyond that, we will remand the balance of Green's state claims to the district court. Ordinarily, when a plaintiff's federal claims are dismissed prior to trial, any remaining state law claims are dismissed as well. *See, e.g.*, *Burnett v. Griffith*, 33 F.4th 907, 915 (6th Cir. 2022). With that presumption in mind, and because we cannot address the malicious prosecution claim at this juncture, we will leave it to the district court to determine in the first instance whether to continue to exercise supplemental jurisdiction over Green's other state law claims, even though Perkins and Keith are entitled to immunity as to the federal claims. *See, e.g.*, *Sussman v. Dalton*, 552 F. App'x 488, 493 (6th Cir. 2014). In deciding whether to exercise supplemental jurisdiction, the district court can consider how our analysis of Green's federal claims would bear on the resolution of his state law claims.

**IV.**

All told, we **REVERSE** the denial of qualified immunity as to Green's federal claims and

**REMAND** his state law claims for further proceedings consistent with this opinion.