RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0128p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

STERLING HOTELS, LLC,

　　　　　　　　　　　*Plaintiff-Appellee*,

　　　*v*.

SCOTT MCKAY,

　　　　　　　　　　　*Defendant-Appellant*.

⎤
⎟
⎟
⎟
⎥　No. 22-1345
⎟
⎟
⎟
⎦

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Flint.
No. 5:20-cv-10452—Stephanie Dawkins Davis, District Judge.

Argued:  April 27, 2023

Decided and Filed:  June 22, 2023

Before:  KETHLEDGE, WHITE, and STRANCH, Circuit Judges.

─────────────────

**COUNSEL**

─────────────────

**ARGUED:**  Jessica L. Mullen, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Detroit, Michigan, for Appellant.  Hasan Kaakarli, AKEEL & VALENTINE, PLC, Troy, Michigan, for Appellee.  **ON BRIEF:**  Jessica L. Mullen, Jason Hawkins, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Detroit, Michigan, for Appellant.  Hasan Kaakarli, AKEEL & VALENTINE, PLC, Troy, Michigan, for Appellee.

─────────────────

**OPINION**

─────────────────

KETHLEDGE, Circuit Judge.  Sterling Hotels sued a state elevator inspector, Scott McKay, asserting several claims under 42 U.S.C. § 1983.  McKay moved to dismiss, in part on

qualified-immunity grounds. The district court declined to address McKay's entitlement to immunity, and McKay appealed. We affirm in part and reverse in part.

I.

Sterling Hotels operated the Wyndham Gardens Hotel in Sterling Heights, Michigan. In 2018, the Michigan Elevator Safety Board notified Sterling that four of the Wyndham's six elevators fell short of state safety requirements because they lacked a backup-power system. The Board therefore required Sterling to install a generator that could power its elevators during an emergency. Sterling requested a variance from that requirement, which the Board granted. On June 25, 2019, the Board issued a new order, this time requiring Sterling to equip its elevators with "battery-lowering" devices. Sterling complied, and the elevator manufacturer—ThyssenKrupp—programmed the devices to lower the elevators to the ground floor in case of an emergency.

On the morning of November 5, 2019, ThyssenKrupp tested the battery-lowering devices and found that they functioned as intended. Later that day, a state elevator inspector, Scott McKay, visited the Wyndham to verify that Sterling had brought the elevators into compliance. But McKay "failed" every elevator, purportedly on the ground that, in case of emergency, the elevators should have been programmed to descend to the hotel's basement—notwithstanding that it lacked an exit. Although the Board never told Sterling to program his elevators to reach the basement, McKay sealed the elevators that same day. As a result, Sterling could no longer rent rooms on five of the Wyndham's six floors.

Sterling thereafter received four new notices of violation from the Board, which asserted that the elevators were out of compliance because the battery-lowering devices malfunctioned and the elevator doors did not open. Sterling requested relief via email from the Board, unsuccessfully, and then brought this suit against McKay, asserting federal equal protection, takings, and due process claims. McKay filed a motion to dismiss, which the district court granted as to the equal protection claim and denied as to the others. The court declined to address McKay's qualified-immunity defense, citing the "difficulty in deciding qualified immunity before any discovery has taken place." This appeal followed.

II.

We review the district court's denial of qualified immunity de novo. *Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012). For purposes of appellate review, a refusal to address qualified immunity is equivalent to a denial. *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004).

A.

As an initial matter, we consider whether the district court was correct to defer its ruling on qualified immunity until after discovery. The Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Indeed, "the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (cleaned up). Thus, when a defendant moves to dismiss on qualified-immunity grounds, district courts cannot "avoid ruling on the issue." *Summers*, 368 F.3d at 886.

Sterling overstates our circuit's "general preference" for deciding qualified immunity at the summary-judgment stage, rather than on the pleadings. *Siefert v. Hamilton County*, 951 F.3d 753, 761 (6th Cir. 2020); *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017). True, the "precise factual basis for the plaintiff's claim or claims may be hard to identify" before discovery. *Pearson*, 555 U.S. at 238. At the pleadings stage, however, the court takes the complaint's factual allegations as true and decides whether—based on those facts—the defendant is entitled to qualified immunity. *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). If so, the case is over; if not, the denial of immunity is provisional, since the court may revisit the issue on summary judgment—where the court will take as true only the facts as to which the plaintiff has created a "genuine issue." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). In sum, a district court must adjudicate a motion to dismiss on grounds of qualified immunity. *Summers*, 368 F.3d at 886.

B.

To overcome McKay's assertion of qualified immunity at this stage, Sterling need only plausibly allege that McKay violated its clearly established constitutional rights. *Courtright*, 839 F.3d at 518 (cleaned up).

1.

Sterling first argues that McKay violated its right to due process when he sealed the Wyndham's elevators without giving Sterling notice or an opportunity to object. To state a procedural due-process claim, Sterling must show that McKay deprived it of a protected property interest without "adequate pre-deprivation procedural rights." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 900 (6th Cir. 2019). Here, McKay does not dispute that Sterling owned the Wyndham or that he deprived Sterling of the use of all its elevators. And the Supreme Court has made clear that "[t]he Fourteenth Amendment draws no bright lines around three-day, 10-day, or 50-day deprivations of property. Any significant taking of property by the state is within the purview of the Due Process Clause." *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991). Hence the only question is whether McKay afforded Sterling due process. *Cahoo*, 912 F.3d at 900.

When a deprivation of property "occurs pursuant to an established state procedure"—as McKay acknowledges it did here—the state must provide adequate notice and an opportunity to respond before the deprivation. *Walsh v. Cuyahoga County*, 424 F.3d 510, 513 (6th Cir. 2005). Here, McKay sealed the elevators without providing any advance notice that the elevators should descend to the basement. Thus, Sterling alleges, McKay failed to provide it with any opportunity to respond to that requirement. That is sufficient to state a due-process claim against McKay. *Cahoo*, 912 F.3d at 900.

McKay asserts that the Board's letters announcing the inspection constituted adequate notice. But those letters did not say that Sterling's elevators needed to descend to the basement in emergencies. Nor does McKay point to any regulation that could have put Sterling on notice of that putative requirement. And to the extent McKay relies on notices sent after the inspection, those plainly cannot satisfy the state's obligation to provide notice before it acts. *See Johnson v. City of Saginaw*, 980 F.3d 497, 508 (6th Cir. 2020).

To overcome McKay's qualified-immunity defense as to this claim, Sterling must also show that its due-process rights were "clearly established," meaning that "existing precedent" placed the relevant "statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017). The Supreme Court has repeatedly held that the Due Process Clause requires "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (emphasis in original); *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971). McKay does not argue that any exception to that clearly established rule even arguably applied to his conduct here. Thus, Sterling's right to advance notice was beyond debate, and McKay is not entitled to qualified immunity.

2.

Sterling next argues that McKay engaged in an unconstitutional regulatory taking when he sealed the elevators. At the time of the alleged taking, however, no court in this circuit had yet decided whether an officer could be liable for a taking in his individual capacity—which is the capacity in which Sterling sued McKay here—and at least one case suggested the contrary. *See Viceroy v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984) ("Plaintiff cites no case, and we can find none, that suggests that an individual may commit and be liable in damages for a 'taking' under the Fifth Amendment"). McKay's potential individual liability for a regulatory takings claim was not clearly established when he sealed the elevators. That means McKay is entitled to qualified immunity on this claim.

\* \* \*

We reverse the district denial of qualified immunity on Sterling's takings claim, and remand the case for further proceedings consistent with this opinion.