NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0482n.06

Nos. 24-2066/2094

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ANDREW EVANS and RYAN GEHEB, | ) | **FILED** |
|     Plaintiffs-Appellees/Cross-Appellants, | ) ) ) | Oct 20, 2025 KELLY L. STEPHENS, Clerk |
| v. | ) ) | |
| MARK GORDON, BRADLEY BELDO, CHRISTOPHER HARMON, EMILY MCGRATH, TERRY ROSS, NICOLE THOMPSON, and JOHN AND JANE DOE OFFICERS, | ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
|     Defendants-Appellants, | ) ) | OPINION |
| MICHAEL WADSWORTH and JESSIE HURSE, | ) ) | |
|     Defendants-Appellants/Cross-Appellees. | ) ) | |

Before: COLE, KETHLEDGE, and NALBANDIAN, Circuit Judges.

KETHLEDGE, Circuit Judge. Three college students were in a car while one of them pointed a Nerf gun out the window and shouted "Give me all your money!" at various students walking by. All three students in the car were arrested for armed robbery that night and suspended from school the next day.

The driver and the idle passenger later brought this suit against two university administrators and several members of the campus police department. The district court granted the defendants' motion to dismiss two claims, but denied their motion for qualified immunity at the pleadings stage. We affirm that denial and dismiss the plaintiffs' cross-appeal.

I.

We accept as true the facts alleged in the plaintiffs' complaint. *Franz v. Oxford Cmty. Sch. Dist.*, 132 F.4th 447, 449 (6th Cir. 2025).

One evening in March 2022, three members of the Oakland University men's varsity swim team—Ryan Geheb, Andrew Evans, and Valance Washington—decided to drive to the cafeteria together. Geheb drove, Evans sat in the back, and Washington sat in front with his window down. Washington had brought along Evans's yellow-orange Nerf gun—a small pistol-shaped children's toy. At one point, Washington, without advance notice to the others, pointed the Nerf gun out his window and yelled "Give me all your money!" to a group of students on the sidewalk. Am. Compl. ¶ 19. Geheb continued to drive, never stopping or slowing down, and Washington repeated his prank twice more before the car reached the cafeteria. When the three drove back from dinner, Washington pulled his prank a few more times.

A student who had been at the other end of Washington's Nerf gun called the Oakland University Police Department to tell them as much. The Department asked the student and her friend to come to the station and provide written statements. Based on those statements—which said both that the students had been frightened and that they thought the gun was fake—the Department sent an emergency alert to the university community. Another student then called the Department to report that she, too, had encountered a man with a Nerf gun—but she had thought his demand for money "was kind of a joke." Am. Compl. ¶ 32.

The Department reviewed security footage and determined that the car in question belonged to Geheb. That evening, Officer Christopher Harmon and Sergeant Bradley Beldo visited the dorm that he and Washington shared. Washington answered the door and explained

that he had never meant to scare anyone. Sergeant Beldo asked him to come to the station later and to bring his friends.

When the young men arrived, Officer Harmon took them one-by-one to the interview room; afterward, he arrested each of them for armed robbery. The three spent the night in the Oakland County Jail. They were released the next morning, but as they left Chief of Police Mark Gordon handed each of them a citation for disturbing the peace.

The same day, Dean of Student Affairs and Diversity Michael Wadsworth sent letters to the three students immediately suspending them and charging each with six Code of Conduct violations. The letters directed the students to contact the Dean of Students Office to discuss the charges and their hearing options. The following Monday—four days after Wadsworth sent the letters—Wadsworth met with the students and reinstated their enrollment. Yet the Code of Conduct charges remained. Washington ultimately agreed to a plea deal with Wadsworth, but Evans and Geheb chose to make their case before the Code of Conduct committee.

The committee found both students responsible for "Disruptive Behavior" and "Intimidation." Am. Compl. ¶ 119. It placed them on disciplinary probation, ordered them to write reflection papers, and required them to serve as graduation-ceremony ushers. Evans and Geheb timely noticed an appeal of the committee's decision but did not pursue it. A few weeks later, Oakland County prosecutors dismissed the students' disturbing-the-peace charges with prejudice.

About two years later, Evans and Geheb brought this suit under 42 U.S.C. § 1983. They asserted three claims against the university administrators: that Wadsworth had violated their procedural-due-process rights by suspending them without a prior hearing; that Wadsworth and Associate Dean Jessie Hurse had violated their procedural-due-process rights by rigging their

committee hearing; and that both administrators had violated their equal-protection rights by aggressively disciplining them to match Washington's punishment and theirs. Evans and Geheb also sued several university police officers for false arrest and malicious prosecution.

The defendants filed a Rule 12(b)(6) motion to dismiss, along with a slew of exhibits. They argued that qualified immunity barred the false-arrest, malicious-prosecution, and suspension-based due-process claims, and that the rigged-hearing and equal-protection counts failed to state a claim. The district court dismissed the latter two. But it determined that the plaintiffs had adequately alleged a violation of clearly established law for the suspension-based due-process claim, and that a determination of the police-defendants' entitlement to qualified immunity was premature at the pleadings stage. The defendants timely noticed this interlocutory appeal, and Evans and Geheb cross-appealed the dismissal of their rigged-hearing claim.

## II.

We have jurisdiction over this interlocutory appeal because the defendants argue they are entitled to qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Our jurisdiction here extends only to questions of law, which we review de novo. *Bey v. Falk*, 946 F.3d 304, 311–12 (6th Cir. 2019).

The parties seem unsure whether the district court provisionally determined that the police officers lack qualified immunity or instead chose to defer that decision until summary judgment. Either way, we treat a refusal to grant qualified immunity the same as we do a denial. *Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 466 (6th Cir. 2023).

The officers argue they are immune from the plaintiffs' false-arrest and malicious-prosecution claims. To overcome qualified immunity, Evans and Geheb must plausibly allege that

the officers' conduct violated their clearly established constitutional rights. *See Martinez v. Wayne County*, 142 F.4th 828, 835 (6th Cir. 2025).

For their false-arrest claim, the plaintiffs must plausibly allege that the officers lacked probable cause to arrest them for any crime—not just the crime the police charged them with. *See Hartman v. Thompson*, 931 F.3d 471, 482–83 (6th Cir. 2019). Here, the officers argue they had probable cause to arrest Evans and Geheb for aiding and abetting Washington in the violation of various disturbing-the-peace and disorderly-conduct ordinances. The officers say, for example, that Washington violated both Oakland University Ordinance 7.03, by using a toy gun on campus to intimidate other students, and Rochester Ordinance 32-246, by engaging in conduct that raised concerns for student safety. The officers also say they had probable cause to believe the plaintiffs joined in these putative offenses as aiders and abettors—because the Nerf gun belonged to Evans, and Geheb drove the car, and both stayed in the car throughout the pranks.

Under Michigan law, to arrest the plaintiffs as aiders and abettors, the officers needed probable cause to believe that Evans and Geheb knowingly assisted Washington in violating the cited ordinances. *See Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011). But the plaintiffs allege that they "were merely present in the car," and that Washington's pranks were both unilateral and spontaneous. Am. Compl. ¶¶ 26, 46, 77, 113. Hence the plaintiffs have plausibly alleged that they were arrested without probable cause. And the same is true for their malicious-prosecution claim, which likewise requires an absence of probable cause for the crime charged. *Howell v. McCormick*, 148 F.4th 834, 852–53 (6th Cir. 2025).

The officers counter that the exhibits to their motion—an excerpt from Geheb's police interrogation, for example, and a transcript of a 911 call—show that they had probable cause to arrest Evans and Geheb. But none of these exhibits correct some unfair omission from the

-5-

complaint itself; rather, they amount to a curated sample of evidence that a party might cite for purposes of Rule 56. *See Blackwell v. Nocerini*, 123 F.4th 479, 486 (6th Cir. 2024). The district court was well within its discretion to refuse to consider these exhibits in what the officers themselves styled as a motion on the pleadings. *See Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679, 688 (6th Cir. 2024).

That leaves the question whether the case law would have made clear to each of these officers that their respective actions toward these plaintiffs—seizing them for 12 hours or so, and charging each of them with a crime—violated the plaintiffs' constitutional rights. On that point the officers say the plaintiffs have not cited any cases involving police actions akin to those here. But the district court again was easily within its discretion to reject that argument at the pleadings stage. Ultimately, the plaintiffs must cite case law that would have made clear to each officer that his conduct was unlawful in the situation he confronted. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). But at the pleadings stage, we lack knowledge of what that situation was. Instead we have only the complaint's allegations and the untold plausible inferences that one might draw from them. Until those allegations and inferences become more concrete, it is enough for the plaintiffs' claim to proceed that the "right to freedom from arrest without probable cause" is one of the "quintessential examples of 'clearly established' constitutional rights." *Jones v. City of Elyria*, 947 F.3d 905, 915 (6th Cir. 2020).

The same reasoning supports affirmance of the district court's denial of qualified immunity to Dean Wadsworth. We do not know all the particulars of the facts relevant to the claim against him any more than we do the facts as to the officers. Indeed, the defendants' arguments here illustrate why motions asserting qualified immunity should usually be brought after discovery, not before. Motions like the one here—when the relevant facts comprise the ones alleged in the

complaint plus a nebula of favorable inferences indulged at the pleadings stage—usually waste the time of the parties and courts alike.

Finally, we lack jurisdiction over the plaintiffs' cross-appeal, which focuses on their claim that Wadsworth and Hurse rigged their disciplinary hearing. That claim presents questions distinct from those raised as to qualified immunity. *See Salter v. City of Detroit*, 133 F.4th 527, 534 (6th Cir. 2025).

We affirm the district court's December 3, 2024 order and dismiss the plaintiffs' cross-appeal.